CORNWALL v. THE STATE.

1. There was no error in admitting in evidence the bag which contained the silver when stolen from the broken building, and which bag was afterwards found in the prisoner's possession; and though the tools admitted in evidence were new ones and had not been used, this did not exclude them, there being evidence of the prisoner's admission that he had thrown away or concealed the tools used in the burglarious enterprise, and also evidence tending to show that the new ones were adapted to a like use as well as many other uses.

2. The bag in which silver money was taken from a safe in the burglarized building, though of little or no value in itself, is such an article of property as the rule with reference to accounting for the possession of stolen goods applies to, this bag having been found in

the prisoner's possession within four days after the burglary was committed.

3. A detective having arrested the accused and being about to turn him over to other custodians, told him he knew where he came from and what he had done, which was false, and said to him privately: "When I turn you over to these people you have my handcuffs on, and if you get away I want you to send my handcuffs back; if you get away you may need this money," giving him two dollars; admissions in the nature of a confession which followed immediately without other inducement than this were admissible in evidence; nor would the fact that the confession was indirect rather than direct render it inadmissible.

4. The jury may consider a confession if it was freely and voluntarily made, though the detective to whom it was made used artifice, trick or deception in order to impose on the accused and induce him to confide in his good will and friendly feeling.

5. None of the witnesses who testified in the case being impeached by evidence introduced for that purpose, it was not error to charge the jury thus: "The law presumes all witnesses who testify under oath are credible and worthy of belief. The law presumes *prima facie* that no witness will wilfully, knowingly and absolutely swear to what is false. The law does not impute perjury to a witness, nor are you at liberty to do so. The law presumes that a witness will not testify falsely; that is a *prima facie* presumption only—it is not a conclusive presumption. The defendant is permitted by law to make a statement in his own behalf not under oath, and it is your right and duty to weigh and consider that statement. The law says that you may believe that statement in preference to the sworn evidence in the case. If you believe it then you may accept the unsworn statement of the defendant in preference to the sworn evidence. Not capriciously and arbitrarily but in search of the truth, you have a right to believe it in preference to the sworn evidence. There is no presumption touching the defendant's statement, no presumption that it is true nor any presumption that it is untrue. In other words, it goes to you without presumption either for it or against it."

6. It was not error to charge the jury thus: "There are two kinds of evidence known to the law; one known as direct evidence, that is that which immediately points to the question in issue. There is also known to the law indirect or circumstantial evidence; that is that which only tends to establish the issue by proof of various facts sustaining by their consistency the hypothesis claimed. If you find there is no sufficient positive evidence to authorize a conviction in this case, then ascertain whether or not there is sufficient circumstantial evidence to authorize a conviction. If you find the evidence acceptable to you is of a circumstantial character only, then determine whether that evidence removes

all reasonable doubts of the defendant's guilt. When testimony relied on to convict is entirely circumstantial, it should be so strong as to exclude every reasonable hypothesis save that of the defendant's guilt. It must be sufficient to remove all reasonable doubt. If there is no reasonable hypothesis upon which it could be placed that would remove any reasonable doubt, if there is a reasonable doubt. But whether the testimony be positive or circumstantial, if it removes from the mind of the jury all such reasonable doubt, it would be sufficient to authorize a conviction. If you find from the evidence in the case, whether positive or circumstantial, that it is sufficient to remove all reasonable doubt of the defendant's guilt, then evidence of either character—if it removes from your mind all reasonable doubt—would legally authorize a conviction."

7. Though it was not accurate to charge the jury thus: "And if you find there was a burglary committed and that goods were stolen from the house burglarized and the defendant was found in possession of such articles under such circumstances as to make it incumbent on him to show that he obtained the articles honestly and legally and he does not do so, then you would be authorized to find him guilty on that proof," yet this inaccuracy is no cause for a new trial in the present case, the evidence as a whole showing beyond any reasonable doubt that the verdict was correct.

8. Jurors will not be heard to establish facts which go or tend to impeach the verdict which they have united with their fellow-jurors in rendering.

9. Where the expression imputed by one witness to a juror as made by him before the trial was, " If they take me on the jury in that burglary I will convict them fellows sure," and by another, " If I am caught on that jury I will convict him sure," and the juror in explanation testified that all he said was addressed to one of the prisoner's counsel and was, " that if the evidence warranted it he would hang the defendant"; also, that he said this without any prejudice whatever against the prisoner and was rather in hopes that he would be rejected as a juror, there was no error in treating the explanation as sufficient and in holding that the juror had not rendered himself incompetent. He was most probably endeavoring to evade service as a juror. He testified also that he was perfectly impartial and only wished the prisoner, who was an entire stranger to him, might have a fair trial.

10. That one of the jurors repeated aloud to the attending bailiff a message which he requested the bailiff to deliver to his, the juror's son, touching the conduct of some work which was to be done at the juror's home, and that the son was near enough to hear the message as his father dictated it, would not vitiate the verdict.

11. That two of the jury left the room in charge of a bailiff to attend a call of nature, and were absent fifteen or twenty minutes, and

° that the ten who remained in the room with the door and windows closed in the meantime were unguarded by an officer and not locked in, will not vitiate the verdict where it appears that neither those who went out nor those who remained in had any intercourse with any one during the absence of the bailiff with the two who thus retired.

12. If the attending bailiff remained all night in the same room occupied by the jury at the hotel, where they were lodged under instructions from the court, this would not vitiate the verdict unless it appeared that the jury were there for the purpose of deliberating, or that something was said or done touching the case, more especially as the affidavits in the record strongly indicate that the room was occupied by the jury merely as a place of repose for the night, and that the case was not under discussion or immediate consideration at any time when the bailiff was present, or during that night. Nor does it appear that he remained in the room, or was in the room at all, save by the affidavit of one of the jurors. February 20, 1893.

Before Judge JENKINS. Jones superior court. April term, 1891.

W. D. STONE and J. C. BARRON, for plaintiff in error.

H. G. LEWIS, solicitor-general, and RICHARD JOHNSON, by H. T. LEWIS, *contra.*

BLECKLEY, Chief Justice.

The storehouse of J. D. Anchors was entered burglariously at night, his safe blown open, and money to the amount of about $225.00 was stolen therefrom. This money was mostly in silver; probably a small amount of it was gold; perhaps some was paper; all of it being contained in a small sack which is designated in the evidence as a shot sack. The commission of the burglary by some one was put by the evidence beyond question. The only real problem which the jury had to solve was whether Cornwall was the burglar or one of the burglars. The motion for a new trial complains of the admission of certain evidence, the charge of the court, refusal to charge as requested, disqualification of one of the jurors, separation and misconduct of the jury, and misconduct of the bailiff who had the jury in

charge. It complains also of the verdict as being unwarranted by the evidence, contrary to the same, contrary to law, etc. The motion was overruled.

1. The shot sack was found in Cornwall's possession four days after the burglary. It was empty. Its admission in evidence was objected to because it was not sufficiently identified, and it was contended that if admissible at all it should have come in "only as a circumstance" and not as stolen property. An examination of the evidence satisfies us that it was identified with sufficient certainty. On principles both of law and common sense it was admissible as evidence tending to connect Cornwall with the burglary, although the sack was empty when it was found on his person. Certain implements, such as drills, were found in his possession at the same time. They were new and had the appearance of never having been used, but the evidence showed they were adapted to use in opening safes as well as in other mechanical work. One of the witnesses had seen similar tools used for getting into safes. Cornwall professed to be a traveling mechanic engaged, when he could get employment, as a marble cutter. Moreover there was evidence of his admission that he had concealed the tools used in committing this burglary. If he had done so, this might account for the purchase of a new set, as parting with the old ones would likely give occasion to procure a new outfit, whether he designed to commit more burglaries or simply to ply his vocation as a marble cutter.

2. It was contended that a small shot bag made of cloth was such a trifle and of so little value as not to be on the footing of stolen property with reference to accounting for the recent possession of it after the crime was committed. The court took a different view, and in so doing was correct. It is not solely the element of value which gives probative force to the possession

of an article of property which disappeared when a crime was committed. The main consideration is that the possession must have had some origin, and as it could have originated by committing the crime, there is, or may be, some presumption, though often very slight, of its having so originated unless a different origin appears to be probable; and inasmuch as the person having the possession best knows how his possession did in fact originate, and has the best means of accounting for it, it is reasonable and proper that the burden of so doing should rest upon him. If any inanimate thing be at a particular place and shortly thereafter is found in the possession of some one at a different place, that he was the person who removed it, unless a different agent is pointed to, is in some degree probable. Here, on the 20th of January, 1891, a small shot sack was in a certain safe locked up in a storehouse situated in the county of Jones, and four days thereafter the same article was found in the possession of Cornwall in the city of Savannah, in the county of Chatham. Why should there not be some accounting for this removal and change of possession by Cornwall, no matter whether the sack was of much or little value or of no value at all?

3, 4. The admissions in the nature of a confession made by Cornwall to the detective were competent evidence notwithstanding they were obtained by artifice, trick or deception, and they could be considered by the jury. The means used to obtain them did not prevent them from being free and voluntary. Doubtless Cornwall was misled and deceived as to the detective being his friend and in sympathy with any effort he might make to effect his escape from custody. But the hope and belief that he had found a friend would not render it the least probable that an admission or confession made to the supposed friend was untrue; and the

reason why confessions made under the influence of
hope are excluded is the danger of their being false.
The detective made no suggestion that he would aid in
effecting an escape, nor did he suggest the making of
any admission or confession. What he said and did is
fairly indicated in the third head-note. He sealed his
pretended friendship by handing Cornwall two dollars,
and thereupon the latter said, "Now I will talk to you,"
and proceeded thus: "These are new tools; they are not
the tools I was using—they are buried underneath some
old cross-ties at the Central railroad wharf. Yes I can
find the place. . . . I told that big son of a bitch to
throw that bag away, and he didn't do it. Those fel-
lows treated me damned mean. They might have gone
to a lawyer and got me out for a few dollars." All this
is pregnant with the implication that Cornwall partici-
pated in the burglary. The confession was indirect
rather than direct, but certainly this would not render
it inadmissible.

5, 6. The court charged as set out in the head-notes
5 and 6. Applied to the facts and circumstances of the
particular case, we consider these instructions as substan-
tially correct. None of the witnesses were impeached
by evidence introduced for that purpose. We think
there is a *prima facie* presumption that all witnesses not
impeached tell the truth, and that there is no presump-
tion one way or the other respecting the truth of the
prisoner's statement. Upon the truth of that the jury
are to pass unaided by any preliminary presumption
for or against him. The charge was correct on direct
and circumstantial evidence and on reasonable doubt.

7. It was not accurate to charge the jury as set out
in the 7th head-note. It is never incumbent on the
accused to show that he obtained stolen articles hon-
estly and legally. A guilty mode of acquiring them will
be as effectual as an innocent one. Their acquisition

by any means whatever other than by participating in the offence involved in the trial, will be a sufficient accounting for the possession to neutralize the effect of that possession as evidence tending to prove guilt. Furthermore, the proposition "you would be authorized to find him guilty on that proof" should have been qualified by adding something to this effect: provided under all the circumstances in evidence your minds are satisfied beyond a reasonable doubt of his guilt. In view, however, of instructions given in other parts of the charge, and as the evidence taken as a whole shows beyond any reasonable doubt that the verdict was correct, the inaccuracy in this part of the charge may be treated as affording no cause for a new trial. Why should a conviction which was undoubtedly right and proper in itself be set aside on a verbal criticism of the court's charge. The possession of the shot sack was not only unaccounted for, but the prisoner virtually admitted that he obtained it by reason of his connection with this burglary and not otherwise.

8–12. The remaining points are left to stand on the head-notes.    *Judgment affirmed.*