## HUDSON *v.* THE STATE.

1. On the trial of a husband charged with a crime, conversations between him and his wife, when relevant, may be testified to by one who overheard them. Such conversations admitted in evidence in this case were relevant.

2. Where a mass of evidence is objected to as a whole, and some of it is competent, such objection is not well taken.

3. Statements of an incriminatory character by one accused of crime are admissible in evidence, if freely and voluntarily made, though made to an officer while in his custody and induced by some trick, artifice, or deception.

4-6. The court did not err in admitting the evidence set out in grounds eight, nine, and ten of the motion, over the objections made thereto by

defendant's counsel; nor in refusing to grant a mistrial for the reasons alleged in grounds eight and nine of the motion.

7. Evidence of the general bad character of the defendant's wife was not admissible.

8-10. The evidence offered by the defendant, and referred to in paragraphs eight, nine,. and ten of the opinion, was not a part of the res gestæ, and was properly excluded.

11. Even if a misstatement of law made by counsel in the argument of a case to the jury can ever be cause for the grant of a mistrial, the language used by the solicitor-general in his concluding argument to the jury, as set out in the eleventh paragraph of the opinion was not, when considered in connection with the judge's note in approving the ground of the motion in reference to such language, cause for the grant of a mistrial or a new trial.

12. The instruction on the subject of reasonable doubt was not error.

13. No question for decision is raised in the 24th ground of the motion for new trial.

14. Nor was the instruction as to apparently incriminating statements of the defendant error.

15. The venue was proved by direct and positive evidence.

16. The alleged newly discovered evidence was not of such a character as would likely cause a different result should another trial be had.

17. The evidence authorized the verdict.

No. 2997. June 19, 1922.

Indictment for murder. Before Judge R. C. Bell. Dougherty superior court. December 9, 1921.

*Claude Payton,* for plaintiff in error.

*George M. Napier, attorney-general, B. C. Gardner, solicitor-general, Seward M. Smith, asst. atty.-gen.,* and *J. D. Gardner,* contra.

Fish, C. J. Glen M. Hudson and Bennie Hudson were jointly charged, in an indictment found in the superior court of Dougherty county, with the murder of Robert Temples and Isaiah Temples on July 12, 1921, by unlawfully and maliciously beating and wounding them with sticks and clubs and by shooting them with a pistol. Glen M. Hudson was tried separately, and found guilty as charged. He moved for a new trial, which being refused, he excepted.

The defendants were husband and wife. The deceased were respectively about nine and four years of age. They were illegitimate children of Bennie Hudson, born before she married Glen M. Hudson. He was not the father of either of them. At the time the children were killed they were living with the defendants on a farm about three miles from the city of Albany, this State. Each child was killed by a pistol shot in his head on July 12, 1921. The

evidence for the State tended to show that they were killed in the morning shortly before sunrise, and that soon thereafter the defendants left the house wherein they lived, closed, except one rear door, and together drove in a wagon to Albany. Some time about eight o'clock in the morning the children were found dead, the older boy's body in a small porch in the rear of the dwelling, and the younger one inside the house. The State submitted evidence as to many circumstances tending to connect both the defendants with the killing of the children. Glen M. Hudson will be hereinafter referred to as the defendant.

1. Error is assigned, in the motion for a new trial, on the admission of the testimony of one Shep Bruno, a witness for the State, over the objections of the defendant. This testimony was to the effect that the witness heard Mrs. Hudson say to the defendant that it seemed strange, and she could not understand why the witness, a negro, could get a job, and the defendant a white man, could not; that the defendant replied that the reason was that Bruno had been working out there four or five years, and they knew him, but that they did not know the defendant; that Mrs. Hudson then said, " One or the other of them [she or the defendant] had to go to work and get a job somewhere, because her children had to have bread and meat, and some shoes and clothes to wear, and he said he didn't have a house full of children to work himself to death for;" that on the same day the witness heard Mrs. Hudson ask a man who came by her house if he could let her have some meal, and, upon an affirmative answer, she requested the defendant to go to the man's house and get it; and that defendant went and brought back a quart and a half of meal. The objections urged against the admission of all this testimony were that it was irrelevant, and constituted a privileged communication between husband and wife. The conversations occurred on the day before the children were killed, and were admissible as circumstances tending to show the lack of interest the defendant had in the children, and the needy circumstances of the family. On the trial of a husband charged with a crime a conversation between him and his wife, when relevant, may be testified to by one who overheard it. *Knight* v. *State,* 114 *Ga.* 48 (39 S. E. 928, 88 Am. St. R. 17); *Ford* v. *State,* 124 *Ga.* 793 (53 S. E. 335); *Nunn* v. *State,* 143 *Ga.* 451 (85 S. E. 346).

2. The sixth ground of the motion consists of more than seven pages of typewritten matter. It relates to the testimony of the deputy sheriff, a State's witness. More than fifty questions asked on direct, cross, redirect, and recross examinations, and the answers thereto, are set forth in detail; much of the testimony was competent and admissible, and much of it immaterial. The testimony was objected in bulk, no specific objection being made to any particular portion of it. As often ruled by this court, such objection presents no question for decision.

3. In the seventh ground of the motion error is assigned upon the admission of the testimony of Denson, the deputy sheriff, a witness for the State, to the effect that he asked the defendant, while in jail, "why he didn't tell us that Mrs. Hudson said that she had killed the children, and he didn't make any answer," and further that the sheriff asked the defendant while in jail, "didn't he tell him in Macon [while in jail there] that Mrs. Hudson said she had killed the children, after they had got about half way to town, and if he didn't say that she seemed to be very nervous; and he said she did." The witness testified that these statements were made by defendant when he was in the "condemned cell" of the jail and in the hall where the "condemned cell" was; that defendant's wife was present; that the statements were freely and voluntarily made by the defendant; and that no threats were made nor any hope held out to him by any one to induce him to make them. It appears from the witness's testimony that a dictograph had been placed in the cell wherein the defendant was confined, that he knew it was there and did not say anything except to tell his wife to "hush." The objection to the testimony was that it appeared from the evidence that the dictograph was put in the cell the day the defendant was brought back from Macon, and "that all the circumstances showed that he was being handled and his person put in different places, and settings were made, and a woman brought up there that day, and the conditions and circumstances were such that he would not exercise his free will; that anything said under those circumstances was not freely and voluntarily made." The court did not err in admitting the testimony as to the statements of the defendant, which were prima facie freely and voluntarily made without the slightest hope of benefit or the remotest fear of injury; it being for the jury to finally

determine, under proper instructions, whether the statements were so made. The fact that the statements may have been induced by a mere trick, artifice, or deception would not render them inadmissible. *Cornwall* v. *State,* 91 *Ga.* 277 (4) (18 S. E. 154).

4. In the eighth ground of the motion it appears that sheriff Tarver, a witness for the State, testified that he had a conversation with the defendant in jail at Macon, that the defendant there made " a statement freely and voluntarily, that he did not threaten him nor offer him any reward." " I told him his wife accused him." Mr. Payton, defendant's counsel, interrupting the witness, said, " I object to conversations with his wife, any conversations between sheriff Tarver and defendant's wife; and I further object to testimony along this line, because the evidence shows he had transferred him from this county to Bibb, and there must have been some reason why he should not have remained in this county; and the fact that he was transferred from this county to Bibb county, and the fact that he was in the presence of the sheriff, brought about a set of circumstances that necessarily created in the mind of the defendant a condition of terror and fright, and any statement he might have made under such circumstances would not be free and voluntary; and we object to it for that reason." Solicitor-general: " I am not asking the witness anything that Mrs. Hudson said. It is immaterial whether Mrs. Hudson said it or not. My friend, Mr. Payton, is assuming that Mrs. Hudson said it. He says he told the defendant that his wife said he killed the children. Suppose, if your honor please, that Mrs. Hudson never opened her mouth to the sheriff." Mr. Payton: " I move for a mistrial, . . on the ground that they are endeavoring to bring before this jury testimony that is inadmissible from any standpoint. The wife's testimony can not be admitted in the trial of a case against her husband, . . and this is seeking to bring before the jury to get the effect of testimony that is inadmissible, and I say the statement of counsel in the presence of the jury renders the jury incompetent to judge the case fairly and impartially; and I move that a mistrial be granted on this point." The motion for a mistrial was overruled. The sheriff then testified, " I told Mr. Hudson that his wife had stated that he killed the children, to me. He said that he didn't do it, that Mrs. Hudson told him —— He said on the morning of the killing that he got up

and carried the cow and calf, and that the oldest boy carried the calf, in the cornfield, and came back to the house about half or three quarters of an hour ahead of him, and he stayed out there in the cornfield walking about looking at the crop, that when he came back to the house his wife was at the wagon and ready to come to town. He said that he did not go in the house, that the house was shut up, that he got in the wagon and came on to town with her. He said that she was very nervous, and that when they got about half way to town she stated that she had shot the children; and I said, 'Glen, did you say anything to her about turning around and going back to see if the children were dead?' He said, 'No,' they agreed to keep it among themselves." Error is assigned upon the overruling of the motion for a mistrial, and also upon the admission of the testimony of the sheriff over the objections of the defendant.

The court did not err in refusing to grant a mistrial, nor in admitting the evidence over the objections made thereto. It was not sought to have the sheriff testify as to what Mrs. Hudson told him, nor did he testify as to that, but merely that he told the defendant that Mrs. Hudson had told the witness that the defendant had killed the children. The solicitor-general expressly stated, when defendant's counsel objected to the testimony, and in the presence of the jury, "I am not asking the witness anything that Mrs. Hudson said."

The fact that the movant in the motion for a new trial says that he insists that certain evidence was inadmissible for stated reasons does not amount to an objection made to the admissibility of the evidence when offered.

5. In ground nine of the motion complaint is made that the court erred in refusing to grant a mistrial for the same reason as stated in ground eight.

6. In ground ten of the motion complaint is made of the admission of the same testimony of the sheriff as was set out in ground eight.

7. Evidence of the general bad character of the defendant's wife was not competent, and the court did not err in excluding such evidence offered by the defendant.

8. The defendant offered to prove by a witness, Russ, that some time during the forenoon of the day the children were killed

the defendant's wife, after he had gone to Albany after her, and immediately upon her return home where the dead bodies of the children were, "pointed towards Skipper [a witness who testified for the State], and said, 'He can tell you who killed my children.'" It appears from the evidence that Mrs. Hudson was informed that her children had been killed while she was in Albany; and after riding three miles to her home, arriving there "some time during the forenoon," after receiving such information, her declaration offered by the defendant was not admissible as a part of the res gestæ. *Lyles* v. *State,* 130 *Ga.* 294 (3) (60 S. E. 578).

9. The court did not err in excluding the testimony of a witness for the defendant that the defendant told him, on the morning the children were killed, the direction the defendant went "when he tied out the cow." This does not appear to be, as contended, a part of the res gestæ, but a self-serving declaration.

10. A ground of the motion claims that the court erred in refusing to permit Mrs. Leary, a witness for the defendant, to testify that Mrs. Hudson, during the afternoon of the day her children were killed, stated to the witness, in the presence of Mrs. McKinney and Mrs. Jacobs, that Mr. Skipper, a witness for the State, had violently whipped the children two days before they were killed, that the defendant had never whipped them, and that he had nothing to do with killing them, and knew nothing about it. Defendant offered to prove by Mrs. Leary and Miss McKinney that Mrs. Hudson made the same statement to Mrs. Leary in their presence. Such statement of Mrs. Hudson was not a part of the res gestæ, nor was it admissible in any view of the case; and accordingly the court did not err in excluding it.

11. In the concluding argument to the jury the solicitor-general used the following language: "When the defendant is shown to be in possession of the children, the law puts it up to the defendant, and he must explain the whereabouts of the children; when the State proves he had the children in his possession, the law puts it on him to prove what became of them." Counsel for defendant immediately moved for a mistrial on account of the use of such language, contending that it was a misstatement of the law, "and put a burden upon the defendant of showing where the children were at all times, which was a matter of impossi-

bility," and that the jury were impressed by the statement of the solicitor-general that because the defendant was the stepfather of the children, and head of the family, he was bound to account for them. The motion for a mistrial was overruled. Error is assigned upon such ruling, and it is claimed that a new trial should be granted on this account. The court attached the following note to this ground of the motion: " Defendant's attorney in argument had quoted from the Bible at some length, and the solicitor-general replied by also quoting from the same authority. He referred to the incident of the killing of Abel by his brother Cain, contending that under the biblical law Cain was held guilty upon circumstantial evidence, and that he was spoken to by the Creator in this language ' Thy brother's blood crieth out unto thee from the ground.' The solicitor-general then said if the children (deceased) were killed in the home of defendant under the circumstances shown in this case, then he submitted to them that the law then says to him (defendant), ' Glen Hudson, the blood of these children crieth out unto you.' After this followed further words of argument by the solicitor-general, substantially as quoted in this ground. Whereupon defendant's attorney, Hon. Claude Payton, moved for a mistrial, stating that ' The solicitor-general is misquoting the law, that he is contending that the burden is on the defendant, and that the law is that the burden is on the State to prove his guilt.' The court overruled the motion to declare a mistrial, and then and there gave the following instruction to the jury: ' Gentlemen of the jury: You will not take the law from any attorney in the case. The court will give you the law in charge which is applicable to the case, and by the law as so given in charge you will be bound. If there are contentions between counsel as to the law, you will not look to either attorney for the law, but will depend entirely upon the court for the law which will be given you in charge. The motion for a mistrial is overruled."

Even if a misstatement of the law made by counsel in argument of a case to the jury can ever be cause for the grant of a mistrial, the language of the solicitor-general, to which exception was made, was not cause for the grant of a mistrial, or a new trial, when considered in connection with the judge's note in approving the ground of the motion.

12. The court charged the jury as follows: "A reasonable doubt I charge you to be a doubt for which you can give a reason. You would have no right to create in your minds a vague or fanciful doubt in order to acquit the defendant, but the doubt should be one reasonably and fairly entertained on the part of the jury, one that grows out of the evidence or arises from the lack of sufficient evidence and leaves the minds of the jury wavering, uncertain, not satisfied from the evidence." Instructions substantially the same as that given here on the subject of reasonable doubt have been many times approved by this court, and the instruction was not error for any reason assigned. *Arnold* v. *State*, 131 *Ga.* 494 (4) (62 S. E. 806), and cases cited; see 11 Michie's Dig. Ga. R. 15, "Reasonable Doubt," "Must be based upon reason."

13. The 24th ground of the motion is as follows: "Movant contends that the charge of the court was error, since this being a case of circumstantial evidence, and since the court permitted sheriff Tarver to testify that he told defendant that the cosuspect and the person jointly indicted told him that the defendant admitted that he did the killing, and that said Tarver, sheriff, went to the defendant when the defendant was in jail, having been moved from Albany to Macon, as the evidence of Tarver shows, and then brought back to Albany, his mind necessarily being perturbed; and to make the statement to the defendant that his wife, the cosuspect, and indicted jointly with this defendant, had told him that he, the defendant, admitted to her that he did the killing, we insist that this evidence required and practically compelled an answer from the defendant, and to use whatever answer he made, either as an admission or denial, for the conviction of the accused. We insist, the court should have told the jury that they should look not alone to the evidence for a conviction, and the failure of the court to so charge the jury at any place in the charge, we insist, was error." This ground is without merit. One of the reasons for so holding is that it is not sufficient to raise any question for decision.

14. The court did not err, for any reason alleged, in giving the following instruction: "If you should find that the defendant, since the alleged killing, has made any statement relative to the issue of his guilt or innocence, and if you should find that the

same was of an incriminating nature, you would not be authorized to consider the same, unless you should find it was voluntarily made by him, without being induced by another, by the slightest hope of benefit or remotest fear of injury."

15. One ground of the motion is that "movant contends and insists that the venue of the case was not conclusively proven beyond a reasonable doubt." This ground is entirely without merit, as there was direct and positive evidence that the children were killed in Dougherty county, Georgia.

16. The movant contends that a new trial should be granted on account of alleged newly discovered evidence of J. W. Aikin, J. J. Tyson, and one Reynolds, to the effect that on the morning Robert Temples and Isaiah Temples were killed they passed the home of the defendant and his wife very early in the morning, just as the sun was beginning to rise, and saw the defendant bring a mule out of the gate. Mrs. Hudson was looking toward Albany, facing the witnesses, all of whom got a good look at her face. "She had on a faded looking light-colored dress." Her husband was proceeding to hitch up the mule to the wagon, and Mrs. Bennie Hudson looked up into the faces of those in the car with deponent. "She was looking pleasant at the time; no sign of anything unusual. We also saw two negro men were standing near, immediately between the barn and the house, the barn being on west side of the road, and the Hudson home being on the east side of the road. The negro men were just standing near the house, and almost on the line between the barn and the house of the Hudsons. We were running very slowly, looking at Mrs. Hudson and speaking about her being at this house this time in the morning; and she could have spoke to us if she had desired, or have waved to us, and we would have stopped, as we passed very near her in the road and saw her closely. She did not attempt to say anything to any of us; and we passed on. All of us are large men." There were affidavits of the defendant and his counsel that they knew nothing as to what these witnesses would testify, until after the verdict. There were also affidavits as to the character, standing, etc., of the witnesses.

This alleged newly discovered evidence is not of such character as would likely lead to a different verdict on another trial; and therefore it was not error to refuse to grant a new trial on account of it.

17. The verdict was authorized by the evidence, and the court did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*