**UNITED STATES of America,**
**Plaintiff-Appellee,**

*v.*

**Roy CRAFT and Arthur Gregory,**
**Defendants-Appellants.**

**No. 18332.**

United States Court of Appeals
Sixth Circuit.

Feb. 20, 1969.

Mayer Morganroth, Detroit, Mich., for appellants.

Robert E. Hamel, Detroit, Mich. (Lawrence Gubow, U. S. Atty., Patricia J. Pernick, Asst. U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before EDWARDS, McCREE, and COMBS, Circuit Judges.

McCREE, Circuit Judge.

Appellants were convicted by a jury of violations of 18 U.S.C. §§ 656, 2113(c), 471, 371 and 2 under an indictment which charged the inducing, aiding and abetting the embezzlement of certain Series E Savings Bond from a federally insured bank, possessing and concealing the same, forgery of the instruments (Craft only) and a conspiracy to receive, forge, and utter and publish the stolen bonds. The only question on appeal concerns the admissibility, over timely objection, of lists of false identification and articles of false identification found in a search of the premises where appellants were arrested.

Allen Ladd Tabron, who was an employee of The National Bank of Detroit, stole 1000 one hundred dollar ($100) United States Series E Bonds from his employer and subsequently pleaded guilty to the theft. At appellants' trial, he testified that he had committed the offense at the instigation of Craft and Gregory who were to forge and negotiate the securities.

Tabron testified that after the theft, he went to Craft's residence where he and Craft detached from the perforated sheets approximately 200 bonds. Later Craft told him that a person named Joe would send someone to his house to pick up the balance of the securities. Craft said he intended to negotiate the $20,000 worth they had separated. Tabron and Craft then took the bonds which had been retained to the apartment of one James Jackson where Mrs. Jackson furnished them with rubber stamps, stamp pads and a typewriter which Craft employed to type the name of James or John Finn on some of the bonds, all of which were in blank form. Tabron testified that this name corresponded to that in one of several sets of identification which Craft possessed. Tabron also typed other names on some of the bonds.

Later, one Cap Simons (now deceased), whom Craft described as a good check casher and forger, left the apartment with Craft, and returned with the proceeds of one of the bonds. Craft told Tabron that Simons had cashed a bond at The Michigan Bank.

Subsequently, Craft, Simons, Jackson, and a young woman departed in Craft's automobile for Chicago where they intended to cash the balance of the retained bonds.

The only evidence other than Tabron's testimony which was offered to establish appellants' guilt was the large number of assorted identification items in the names of persons who were otherwise strangers to the litigation. The validity of the search which produced this evidence is not in issue.

Roy Craft was arrested four days after the theft at an address on Seyburn Avenue in Detroit, Michigan, and exhibits 2 through 2–II[1] were seized after a search of a bedroom in which some articles of Craft's personal property were found. There were four other persons in the house at the time. None of these items of identification was shown to have been in Craft's handwriting, nor were any of them in the name of James or John Finn.

Arthur Gregory was arrested in an apartment on Baldwin Avenue on the same evening and a search of his person produced exhibits 5A through 5K.[2]

1. These exhibits, the originals of which we have inspected, were described by the identifying witnesses as follows:

A (Michigan) driver's license in the name of Michara Salame Kalanze. One driver's license in the name of Marvin Paul Steinke, Michigan license. A driver's license marked "Duplicate" in the name of Larry Lynn Vaughn, a Michigan license.

A Social Security card in the name of Rufus George Collins, No. 378–40–9287.

One employee's Federal Credit Union card in the name of R. G. Collins. It's 6014 Chene, Detroit.

One Social Security card in the name of Raymond Harris. A certificate of service in the armed forces of the United States in the name of Raymond Harris. A Social Security card in the name of Raymond Harris. A driver's license in the name of Raymond Harris, a Michigan license.

An American Express credit card in the name of K. L. McIntosh.

An employee's identification card for the Ford Motor Company in the name of William R. Allen. A selective service card in the name of William Robert Allen.

A Social Security card in the name of Elmer A. Burch. A certificate of birth in the name of Elmer A. Burch.

A 1964 NAACP membership card in the name of Richard D. Dean of 11641 St. Aubin, Hamtramck. A family membership card to People's Outfitting Company, their Gold Star Club, in the name of Richard D. Dean. A selective service registration certificate in the name of Richard D. Dean.

A Michigan Bankard card in the name of L. S. Cloyd, Jr. A driver's license in the name of Louis Samuel Cloyd, Jr., Michigan license. A Blue Cross-Blue Shield identification card dated 1/1/64, in the name of Louis S. Cloyd, Jr. A driver's license in the name of Louis Samuel Cloyd, Jr., Michigan license. It was marked "void."

A Michigan certificate of auto registration made out to Nicholas F. Hytinen, for a 1958 two-door Rambler; it was a '64 registration. A selective service classification card in the name of Nicholas F. Hytinen. It was dated 5/14/65. A selective service notice of classification in the name of Nicholas F. Hytinen dated 12/10/65.

A factory vehicle operator's license for Chrysler Corporation, the Sterling stamping plant, in the name of W. McKenny, to expire 12/31/66. A driver's license in the name of Wallace McKenny, Michigan license.

A selective service registration certificate in the name of Fay Van Pelt, Jr., a discharge certificate for the U.S. Navy in the name of Fay Van Pelt, Jr. A certificate of satisfactory service in the U.S. Navy in the name of Fay Van Pelt, Jr.

A J. L. Hudson's chargeplate in the name of Mrs. Ann L. Gibb, 3747 West Boston Boulevard, Apt. D–2.

A 1965 to '66 membership card to Chrysler Local No. 7 in the name of B. Baker.

A City of Detroit Housing Commission identification card in the name of Charles R. Thompson, 6400 Woodlawn. A certificate of birth registration in the name of Esther Marie Sigler. A bank account book for a savings account for the Bank of the Commonwealth, Detroit, Account No. 54–1–000005. A black address book and a bank account book for the City National Bank of Detroit, Detroit, Michigan, Account No. 21–2563. A check book for Martha S. Phillips, Michigan Bank National Association, Detroit, Michigan, checks numbered 238 to 250 intact, checks numbered 226 through 231 were made payable to a Thomas A. Mee.

2. These exhibits consisted of:

A Blue Cross card for a Thomas A. Mee, employment group, another is a Cubmaster's progress card, scouter's key, Thomas A. Mee, another Boy Scouts of

Gregory acknowledged that he lived in the apartment and there were articles of his personal apparel there. A blank check bearing the printed names of The

America of Thomas Mee, Fisherman's Club enrollment card, Thomas Mee, another Motor City Tube Company, Thomas Mee, Assistant Scoutmaster Thomas Mee, Troop 493, another membership card in—the Methodist Church—made out to Thomas A. Mee. An Inter-Ocean Insurance Company card—in blank.

3. A four-cent postcard addressed to Dr. Richard Thompson, 1504 Sodon Lake Drive, Bloomfield Hills, Michigan, one three by five card with the following information on the front: Van Patrick Sandalwood Apartment Hotel, 17100 Gulf Boulevard, North Redington Beach, St. Petersburg, Florida, WAverly 1–9931 is the telephone, 391 9931 follows that, and on the reverse side: 868–1206–H83 Vikiling 391–9362; One membership card to the Wayne County Association of Physicians and Surgeons of Osteopathic Medicine, Inc., made out to Richard Thompson, D.O. One Social Security card number 375–40–9397, One diner's card to Beauchamp's, Detroit; one guest card to Sheraton Hotels, One Mobil credit card, one Sunoco credit card, one Shell credit card, one hospitality card "Gold Card" for all Leo F. Corrigan Hotels. One staff card to Detroit Osteopathic Hospital, 12523 Third Avenue, Detroit; one membership card to the American Osteopathic Association, expiration date 5/31/67; one personal travel credit card for United Air Lines, one membership card to the Northwest Sportsmen's Club, Detroit, Michigan; one American Express credit card; one membership card to AAA, which has an expiration date of 5/1/67; one credit card to the Red Carpet, 28 West Elm Street, Chicago; one courtesy card to the Golden Lion, 22380 Moross Road, Detroit; one 1962 credit card to Huki-Lau Restaurant and Hawaiian Gardens Resort Motel, Hawaii, Michigan, located in Holly, Michigan; one credit card to Richelieu's Restaurant, 1033 Washington Blvd., Detroit; two credit cards to Northwood Inn, Club Berkley, Hund's Downtown. One credit card to Larco's Inn, 7525 W. McNichols Road, Detroit; one credit card to Jeri's Lounge, 18300 Woodward Avenue; one membership card to the American College of General Practitioners in Osteopathic Medicine and Surgery; one membership card to the Greater Detroit Board of Commerce; one membership card to the

National Bank of Detroit and Allen L. Tabron was taken from Gregory's wallet. A search of the apartment produced exhibits 4 and 4A through 4–MMM[3] on a

American College of Sports Medicine; two membership cards to the Kiwanis Club of Highland Park, Michigan; one voting membership card to the American Heart Assn., Inc., Michigan Heart Assn.; two credit cards to the Park Shelton Hotel, Detroit, Michigan; one international charge card for Hertz Rent-A-Car; one Diners Club card; one 1963 credit card to the Huki-Lau Restaurant and Hawaiian Gardens Resort Motel, Holly, Michigan; two Blue Cross-Blue Shield identification cards, one dated 1/1/65 and the other dated 10/1/65 made out to Richard A. Thompson. A City of Birmingham, Michigan voter's registration certificate dated 10/1/64; one credit card to the Fox & Hounds Inn, Bloomfield Hills, Michigan; one hospitality card to the Roostertail Club; one membership card, 1962 to 1963 to the Michigan Association of Osteopathic Physicians and Surgeons; one membership card, 1965 to 1966 to the Michigan Association of Osteopathic Physicians and Surgeons; one voter's card for school elections only in Bloomfield Hills School District No. 2.

In a blank identification folder, the other folder, there is a card in the name of Meyer F. Levy printed on the front on one side, also showing an address Sherman Brothers, Inc., 205 West 39th Street, New York City; and a card in the name of Ed. T. Hyde, printed on the front, Manager and Owner of the Purefoy Hotel, Motel and Hyde Hotel, Talladega, Alabama.

Then also contained in the other black identification folder is identification in the name of John W. Freud. This consists of membership cards from the Monroe, Michigan area, including the Monroe Golf and Country Club, Civil Defense Forces of Michigan, blood donor's card, membership card, membership card to the Academy of Medicine of Toledo and Lucas County; one 1966 membership card to the Michigan State Medical Society; one 1966 membership card to the American Academy of General Practice; one 1966 membership card to the American Medical Association; one life membership card to the University of Michigan Union; a staff card for the year ending 12/31/66 to Mercy Hospital, Monroe, Michigan; One Pure national credit card; one charge card to Hertz Rent-A-Car; one lifetime CITCO credit card;

shelf in the kitchen cupboard. Five other persons were present in the apartment. None of the seized evidence was in Gregory's handwriting.

Appellants contend that the exhibits, which we agree seriously prejudiced them in the contemplation of the jury, were in no way probative of the offenses charged and that it was error to admit them because none of the identification was shown to be in their handwriting, nor at the place of the commission of the offense charged, nor to have been used as a means for committing any of the offenses.

The District Judge considered appellants' objections *in camera* and the record before us does not reveal the reason for his ruling admitting them in evidence.

Appellee urges that they were properly received as relevant evidence of appellants' ability and intent to commit the offenses charged. We agree.

 Relevancy describes the relationship between a proffered item of evidence and a proposition which is provable or material in a given case. There is no legal test of relevancy and reference must be made to logic or general experience to demonstrate the existence of a relationship and its proximity or remoteness. George F. James, Relevancy, Probability and the Law, 29 Calif.L.Rev. 689 (1941). Justice Cooley wrote in Stewart v. People, 23 Mich. 63 (1871):

> The proper test for the admissibility of evidence ought to be, we think, whether it has a tendency to affect belief in the mind of a reasonably cautious person, who should receive and weigh it with judicial fairness.

Consistent with these principles, courts have admitted logically relevant evidence except where some countervailing consideration of policy contraindicated.

Appellants rely on Sorenson v. United States, 168 F. 785 (8th Cir. 1909), where, in a prosecution for breaking and entering a postoffice, it was held error to admit weapons and implements adaptable for burglarizing a safe found in the defendant's possession 18 days after the alleged burglary and at a point 19 miles distant from the postoffice. Their employment in the commission of the offense had not been established. An analysis of that decision, however, demonstrates that appellants' reliance is misplaced. In *Sorenson*, the evidence was admitted to establish a fact not material in the prosecution, that the defendant might be contemplating the commission of *another* crime. The court had instructed the jury,

> The evidence which has been allowed to come before you should have such weight as in your opinion it is entitled to under the showing that they were going to commit some other crime.

██ The dissenting opinion (which regarded the admission of this evidence as harmless error) observed:

> The correct rule, however, is that physical capacity to commit a crime (Thiede v. Utah, 159 U.S. 518, 16 Sup.Ct. 62, 40 L.Ed. 237), or the possession of skill, knowledge, or familiarity with the special means employed in its commission, has a probative value. If the means are peculiar, and such as men generally are not familiar with or capable of using, evidence that an accused is so equipped is obviously admissible. People v. Brotherton, 47 Cal. 388, 402.

We agree with this statement which is supported by the weight of authority. Thus, in Sanders v. United States, 238 F.2d 145 (10th Cir. 1956), apparatus found in a defendant's possession adaptable for use in burglarizing a safe was held properly admitted in a prosecution for bank robbery where a safe had been

one 1959 national credit "Gold Card" for Union Oil Company of California, Pure Oil Company; one lifetime credit card to Cities Service Oil Co., ; one Gulf credit card; one selective service card; one voter's registration certificate for Monroe, Michigan date 11/8/65; one 1966 Mason membership card to Monroe Lodge No. 27. All of this particular identification was contained in a folder with the name of John W. Freud.

broken into, even though its use in the commission of that particular offense had not been established. The court stated at 147:

> It is the generally accepted rule that in a case in which the defendant is charged with the offense of burglary, after proof of the burglary has been introduced the prosecution may show that the defendant had burglar tools or implements in his possession soon after the time of the commission of the offense and may introduce such tools or implements in evidence. White v. United States, 5 Cir., 200 F.2d 509, *certiorari denied,* 345 U.S. 999, 73 S. Ct. 1142, 97 L.Ed. 1405; Starchman v. State, 62 Ark. 538, 36 S.W. 940; Miller v. State, Tex.Cr.App., 50 S.W. 704; Cornwall v. State, 91 Ga. 277, 18 S.E. 154; State v. Lynch, 195 Iowa 560, 192 N.W. 423; People v. Urban, 381 Ill. 64, 44 N.E.2d 885, 143 A.L.R. 1194.

See also People v. Adamson, 27 Cal.2d 478, 165 P.2d 3 (1946), *aff'd.* 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947).

■ Determination of the admissibility of circumstantial evidence is a matter properly referred to the discretion of the trial judge and his ruling should not be disturbed except in the case of a clear abuse of discretion. Charles T. McCormick, Evidence (1954) § 152. Rule 45 of the Uniform Rules of Evidence summarizes the considerations involved in the exercise of discretion in this respect as follows:

### Discretion of Judge to Exclude Admissible Evidence.

> Except as in these rules otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had rea-

sonable opportunity to anticipate that such evidence would be offered.

■ In the appeal before us, appellants' possession of complete "sets" of identification of other persons is, at the very least, an extraordinary circumstance and one which would (and doubtless did) permit the jury to infer that such items would be extremely useful in negotiating stolen bonds. From this conclusion, the inference that appellants were parties to the conspiracy and participants in the substantive offenses is also permissible.

The relevancy, or relationship, is not remote, nor is it contended that there was surprise or that its admission consumed an undue amount of time. We find, moreover, that the danger of undue prejudice does not outweigh its probative value. We find no abuse of discretion and no error in its admission.

Affirmed.