**Charles Frederick MOORE,
Petitioner,**

v.

**Joe S. HOPPER, Warden, Georgia
State Prison, Respondent.**

**Civ. A. No. 74–55 MAC.**

United States District Court,
M. D. Georgia,
Macon Division.

Jan. 11, 1974.

Frank K. Martin, (Martin, Kilpatrick & Davidson), Columbus, Ga. for petitioner.

Arthur K. Bolton, Atty. Gen., Thomas P. Burke, Deputy Asst. Atty. Gen., Atlanta, Ga., for respondent.

BOOTLE, Senior District Judge:

Charles Frederick Moore (defendant) was convicted by a jury of the crime of murder in Houston County Superior Court in February, 1973, and received a life sentence. This conviction was affirmed by the Supreme Court of Georgia. Moore v. State, 230 Ga. 839, 199 S.E.2d 243 (1973).

Defendant was represented by counsel at his trial. New counsel represented him on his appeal and represent him in this proceeding for habeas corpus. Defendant complains of the use at his trial of a confession which he signed on December 11, 1972. His contentions are that he was not given the proper *Miranda* warnings immediately prior to the giving of said confession, and that said confession was obtained from him by use of trickery on the part of the investigating detective. It so happens that these identical contentions were fully advanced and urged by defendant at his trial. The issues thus raised were tried in the state court. In the tradition of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the trial court held a separate hearing outside the presence of the jury at which both interviewing officers and the defendant testified at length, after which the trial court expressly found that the statements made on December 10 and December 11, while the defendant was in custody, were voluntarily made. Thereafter, the jury trial resumed and at the conclusion of the trial the jury was properly instructed on the law relating to confessions.

The respondent has filed a motion to dismiss or in the alternative for summary judgment, and has attached thereto a copy of the entire trial transcript. A careful study of this transcript discloses, and this court now holds, that the trial court hearing fully complied with the standards of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and that in accordance with 28 U.S.C.A. § 2254(d) the factual determinations made by that court are fairly supported by the record. The judgment of said court is presumed to be correct. All this being true, defendant is not now entitled to a hearing before this court for the purpose of retrying said issues. Langlois v. Wainwright, 445 F.2d 836 (5th Cir. 1971); McDonald v. Beto, 405 F.2d 884 (5th Cir. 1969); Farmer v. Caldwell, 476 F.2d 22 (5th Cir. 1973).

The record indicates that defendant, whose divorce was about two and one-half months old, shot and killed the husband of the woman to whom he had recently proposed marriage and whose divorce from the victim was then in process and that the shooting took place at about 2:45 A.M. on Sunday, December 10, 1972, while the victim was at home probably reclining on a couch somewhat sickened by whiskey which he had been drinking socially with defendant, as well as from the effects of the redoing of victim's tattoo by defendant at victim's request, the defendant having been a visitor in the home of victim and vic-

tim's wife since about 11:00 P.M., December 9, until the fateful occurrence about 2:45 the next morning.[1]

The detective testified that on Sunday morning prior to any questioning he advised defendant completely of his Constitutional rights by reading to him a combined statement of rights and waiver of counsel (the sufficiency of which document is not questioned), and that defendant signed the same after hearing it read and after reading it himself and after stating that he understood his rights. The defendant admits that he was advised of his right to a lawyer to represent him at that time; that he did not have to make a statement; and that anything he said might be used against him. The defendant, while saying that he did not read the paper and that it was not read to him, admits that he "glanced at the paper" and signed it. After this warning, and after the signing of this paper sometime after 7:00 A.M. and before lunch on December 10, defendant wrote out his first statement and signed it. It was completely non-inculpatory.

The second statement, the confession, written out and signed by the defendant was executed the next morning, December 11, sometime between 8:00 A.M. and noon, according to the detective, and later in the afternoon, about dusk, according to the defendant.[2] Before this confession was written and signed the detective had obtained two statements from the victim's wife.[3] The detective then told the defendant that she had told the officers what had happened including his disposal of the pistol and added that the officers had recovered the gun, when in fact they had not recovered it. The defendant's contention in the state court and in this court is twofold: first, that the *Miranda* warnings should have been repeated to defendant on Monday, December 11; and, second, that the confession is invalidated because of the trickery or false statement by the detective to the effect that the gun had been recovered.

*Miranda* does not require multiple warnings. In Evans v. Swenson, 455 F.2d 291, 296 (8th Cir. 1972), the court said:

This Court has held that the "Miranda" warning need not be repeated in full each time the interrogation process is resumed after an interruption. Tucker v. United States, 375 F.2d 363, supra; Miller v. United States, 396 F.2d 492 (8 Cir. 1968), cert. den. 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574. In the latter case, this Court stated (p. 496 [of 396 F.2d]):

"It is difficult to lay down a rule of general application, and we will not attempt to do so here. In each case,

1. The defendant, in his contested confession of December 11, 1972, states it this way:

12–11–72

I, Charles F. Moore went to the Dempsey residence at 108 Leota Circle at about 11:00 pm 9th of December, 1972. We, (Jack and I) had a few drinks while talking about his cars and my business at the station. Jack played some records and I taped some of them. Later on, Jack started talking about his tatoo. During the tatooing, Jack took a few healthy drinks from the bottle and Jean gave him some pills. He started to talking about how low she is and I got the .32 pistol he had acquired for Jean and she went out to my car and drove over to Claxtons Bar B–Q and waited for me. I just couldn't do it and I turned to leave. Jack said I didn't think you could (or would) do it. Then the gun went off and in panic I just pulled the trigger and ran. Coming back from the Hospital in Macon, I slowed the car down at a bridge and Jean threw the gun out of the window that was used to kill Jack Dempsey.

/s/ Charles F. Moore

2. This difference as to the exact time is of little importance because the defendant admits that he was not questioned any on Monday except in the evening.

3. She had ridden in the ambulance with victim from Warner Robins to a hospital in Macon. Defendant had followed in his car. She rode back to Warner Robins with defendant in his car. She told the officers what had happened including the fact that on this return trip she had observed a pistol in the car and that the defendant had stopped the car and thrown the pistol over a bridge.

the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?"

We are satisfied in this case that Evans did. See, also, United States v. Osterburg, 423 F.2d 704 (9 Cir. 1970), cert. den. 399 U.S. 914, 90 S.Ct. 2166, 26 L.Ed.2d 571.

And the Court of Appeals for the Ninth Circuit said in Maguire v. United States, 396 F.2d 327, 331 (1968):

> *Officer Hammond's warning, which was clearly adequate to meet the Miranda standards, came three days before the interrogation of appellant by Agent Turnage;* thus, even if the warning given by Turnage was insufficient, the appellant could not claim he had *not* been apprised of the *Miranda* warnings. [Emphasis in original.]

This court is convinced, as was the trial court, that the defendant with a full knowledge of his legal rights knowingly and intentionally relinquished them. He testified: "I had nothing to hide from them, why should I ask for a lawyer?" (R. 209).

It may be that in fact the defendant was again advised of his rights before giving the second statement. The detective testified in that respect: "I believe, sir, . . . before he wrote us a statement [the second one] that he was advised again of his rights. I am not sure, though." For the purpose of this decision we are assuming that he was not re-advised and hold that such re-advice was not legally necessary.

■ Confessions are not generally rendered inadmissible merely because they are obtained by fraud, deception, or trickery practiced upon the accused, provided the means employed are not calculated to procure an untrue statement and the confession is otherwise freely and voluntarily made. 29 Am.Jur.2d Evidence §§ 571 and 572; 23 C.J.S. Criminal Law § 827. The two provisos are met in this case. The misrepresen-

tation that the gun had been found was not calculated to procure an untrue statement. In Cornwall v. State, 91 Ga. 277, 282, 18 S.E. 154, 156 (1892), it was stated: "[T]he hope and belief that he [accused] had found a friend would not render it the least probable that an admission or confession made to the supposed friend was untrue . . . ." It was held in Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1424, 22 L.Ed.2d 684, 693 (1969) that the fact that state police falsely told the defendant, a mature individual of normal intelligence, during questioning of short duration that his associate had confessed, while relevant, was insufficient to make an otherwise voluntary confession inadmissible. *See also* United States *ex rel.* Lathan v. Deegan, 450 F.2d 181, 185 (2d Cir. 1971); United States *ex rel.* Caminito v. Murphy, 222 F.2d 698, 700 (2d Cir. 1955); Hudson v. State, 153 Ga. 695, 698, 113 S.E. 519, 520 (1922), and Cornwall v. State, *supra.* In the nearby field of entrapment the Supreme Court says in Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413, 416 (1932): "Artifice and stratagem may be employed to catch those engaged in criminal enterprises"; and in Sherman v. United States, 356 U.S. 369, 372, 78 S. Ct. 819, 820, 2 L.Ed.2d 848, 851 (1958): "The function of law enforcement is the prevention of crime and the apprehension of criminals. . . . Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer"; and Judge Sibley, when a District Judge, wrote in United States v. Wray, 8 F.2d 429, 430 (N.D. Ga.1925):

> [W]hen it is suspected that a crime is being committed and the question is as to who the guilty persons are . . . traps may be laid and baited as by decoy letters, by opportunities to sell whisky or morphine, in order to catch the guilty person. . . .
> The question . . . is not one of laying a trap or of trickiness or deceit, but one of seduction or improper inducement to commit crime.

■ In the case at bar the detective testified with commendable frankness that it was his idea to lead the defendant to believe that the murder weapon had been found when actually it had not. He opined that the way to get police work done is to do it "the best way you can", adding that "this was a homicide —no penny ante theft." It could hardly be said that a mature individual of normal intelligence, after being fully advised of his Constitutional rights and consenting to be interviewed without counsel, could not, during short periods of question when not otherwise imposed upon, be asked leading questions, questions which clearly suggest the desired answer; nor can it be said that, under such circumstances, his being falsely advised that the murder weapon has been found is sufficient in and of itself to render his otherwise free and voluntary confession inadmissible. Just as trickery may be employed prior to the act to detect the offense, it may be utilized after the act to identify the offender. Defendant's reliance upon Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L. Ed.2d 1265 (1959) is misplaced. Spano, who had been advised by his attorney to make no statements was subjected by numerous law enforcement officers to questioning for five hours, during which his repeated requests for a consultation with his attorney were denied. He was subjected also to the option of not talking and having his friend, a police officer, lose his job. The trickery involved was the false representation that Spano's friend, the police officer, would lose his job. Of course, that trickery was relevant and did not detract from, and may have added something to, the other factors, which, even without such trickery, would have compelled the non-use of the confession.

■ Conspicuous in this case is the absence of any prolonged questioning, and even any claim by defendant that he was threatened or abused in any manner. His only claim of promises made to him is, in effect, that on the morning of the 11th, before the confession, the detective said that he would get him a good lawyer the next day and help him take care of his business and personal affairs, and said to him: "you help me and I'll help you." On the other hand, the detective specifically denied telling the defendant that he would get him a good lawyer and denied making him any promises whatsoever, except to get him a court-appointed attorney.

The motion of the respondent in this case for summary judgment is hereby granted and counsel for respondent may prepare and present an appropriate order, after affording counsel for defendant opportunity for suggestions as to form.