## GENE HASKETTE v. STATE.

No. A-9397. Dec. 22, 1938.

(85 P. 2d 761.)

Charles G. Ozmun, of Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Victor Eckler, Co. Atty., of Waurika, for the State.

BAREFOOT, J. The defendant was charged by information in Jefferson county, Okla., with the larceny of an automobile on the 9th day of September, 1935; was tried, convicted and sentenced to serve a term of five years in the penitentiary, and has appealed.

It is urged for reversal of this case:

(a) Statements made by the county attorney in his closing argument to the jury.

(b) That the evidence was insufficient to convict defendant, and the court erred in failing to sustain the demurrer to the evidence.

These two errors may be considered together.

The evidence on the part of the state revealed that Mrs. Tommy Kier, who resided in Waurika, Jefferson county, Okla., drove her father, P. W. Denny's, car to a certain store building in the city of Waurika, where her husband worked. She stepped into the store after parking near the front. She remained in the store some five minutes waiting for her husband, and when she returned to where she had parked the car it was gone.

During the time Mrs. Kier was in the store two young men came in; one wearing a jacket, the other in his shirt sleeves. One asked for a drink of water, and the other purchased some tobacco and later came back and asked for some matches. This party was positively identified by Ted Alford, who was employed in the store, as being the defendant in this case, Gene Haskette. These parties left the store immediately and prior to the time Mrs. Kier left and found her car missing. The car was recovered about two weeks thereafter in the town of Montague, Montague county, Tex., and considerable damage had been done thereto.

L. E. Colston, a farmer, living five miles west of Hastings, and at a point between Hastings and Temple, about 17 miles west of Waurika, this being the same direction the officers tracked the car that was taken from Waurika, had left his car parked on the highway and saw two young men stop where his car was parked. He was about 250 or 300 feet from them and when he holloed they jumped in their car and speeded away. Upon investigation he found that they had taken the license tags from his car. He was unable to identify defendant as one of the parties because of the distance, but his description of them compared favorably with a general description of the defendant.

On the night of September 10, 1935, the night after the car was stolen from Waurika, defendant, Gene Haskette, and a boy named Raymond Doldy, were found by officers of Wichita Falls, Tex., driving this stolen car upon the streets

of Wichita Falls. Defendant was arrested, charged with speeding and was later released and permitted to return to his home. The other boy, Raymond Doldy, was not held and was permitted to go with the car. The car, some two weeks later, was found in Montague county, Tex. When returned to Waurika it had on it the tags taken from the car of Mr. Colston, between Hastings and Temple, on the evening of September 9, 1935. This car was identified at the trial by officers from Wichita Falls, Texas, as being the same car the defendant was driving at the time he was arrested on the streets of Wichita Falls on the night of September 10, 1935, and charged with speeding. The evidence disclosed that Raymond Doldy and defendant both resided in Wichita Falls, and lived in close proximity to each other.

After defendant was arrested and brought to Waurika by the undersheriff of Jefferson county, this officer testified that defendant told him: "A. He said on that day he was working out over at Archer, Tex., south of Wichita Falls on a little oil well for a man named Herman Frazier, I believe he said his name was." There was no denial of this statement.

The defendant's defense was what is known in law as an alibi. Six witnesses, all but one of them being relatives of defendant, testified that defendant was at his home in Wichita Falls, Tex., on September 9, and 10, 1935; that he was sick on the 9th and in bed practically all of the day and did not get up until some time Tuesday, September 10th. The defendant put up a good alibi, and if the jury had believed him they would have acquitted him. He did not take the witness stand in his own behalf as he had a right not to do under the law.

From the above statement it will readily be seen that there was a direct conflict in the evidence of the state and the defendant. The court instructed the jury that the state depended upon circumstantial evidence for a conviction, and defined circumstantial evidence to the jury. An instruction

was given by the court outlining the defense of an alibi, and the jury were instructed that they were the sole judges of the credibility of the witness and from all of the evidence they were to decide where the truth lay.

It has been the uniform holding of this court, that where the evidence is conflicting, and that offered by the state is sufficient to uphold the verdict of the jury, that the same will not be set aside on appeal. The reason for this rule is that the jury hears and sees the witnesses upon the stand, has the opportunity to observe their demeanor, and are therefore in a much better position to decide questions of fact than the appellate court. And while this court has the power to set aside the verdict of the jury, the facts in this case do not appeal to us as one where that right should be exercised.

It is further contended that this case should be reversed by reason of the following proceedings during the final argument of the county attorney:

"By the Court: The County Attorney turns around and faces the jury and calls him a thug. To which the defendant objects and objection sustained and jury admonished not to consider it. Mr. Eckler: Yes, we would identify him, he knows that is the dirty scamp right there. Mr. Ozmun: We object to that as improper argument and highly prejudicial to the rights of this defendant. The Court: Sustained. You can make just as effective an argument without saying that about the defendant, don't turn around. Mr. Eckler: Exceptions. Mr. Eckler: (Addressing the jury) I am sorry, gentlemen, if I have said anything not supported by the evidence and borne out by the record in this case, and I ask you men to disregard it if I have. Mr. Eckler: Take a look at this fellow, take a fellow like that, who would steal a car and if you tried to stop a fellow like that he would kill you. Mr. Ozmun: We object to that as trying to prejudice the jury against the defendant. The Court: Overruled. Mr. Ozmun: Exceptions."

The main case relied upon by defendant in his brief is the case of Mooney v. State, 76 Tex. Cr. R. 539, 176 S.W. 52. We have carefully read this case and fail to see that it sus-

tains the contention of defendant. The court, in that case, quoting from the case of Pierson v. State, 18 Tex. App. 524, says [page 57]:

"We can perceive no impropriety in them. It was the duty of the district attorney, if he thought the evidence established the guilt of the defendant, to demand his conviction. He demanded a conviction in the name of the state, in the name of law, justice, and right, in the name of society, in the name of the widow and children of the deceased. We see nothing wrong in this. If the defendant committed the murder, he had acted against the peace and dignity of the state; he had outraged law, justice, right, and society; he had clothed the wife in widow's weeds, and had made fatherless the children of the deceased; and each and all of these consequences of his crime demanded his conviction and punishment. It has become quite common to except to the remarks of counsel for the state in their addresses to the jury. We find such exceptions in the majority of contested cases that come before us. If we had sustained all these exceptions, the effect would have been to have virtually closed the mouths of prosecuting attorneys. While argument should be restricted legitimately, it should not be so unreasonably limited as to render it ineffectual. The state has rights in this respect as well as defendants. And, in view of the frequency of exceptions of this character, we will take occasion here to say that, before we will reverse a conviction because of remarks of prosecuting counsel, it must clearly appear to us: (1) That the remarks were improper; and (2) that they were of a material character, and such as, under the circumstances, were calculated to injuriously affect the defendant's rights."

The court then quotes from, and cites many Texas cases, and says:

"Mr. Branch in his Criminal Law, § 62, p. 32, states another rule:

" 'Unless the remarks of counsel are obviously of a nature to impair the rights of defendant, or prejudice his case before the jury, such remarks though improper, will not be considered for reversal, unless a charge was asked and refused and exception reserved. Kennedy v. State, 19 Tex. App. [618] 634; Young v. State, 19 Tex. App. [536] 543; Jones v. State, 33 Tex. Cr. R. [7] 8, 23 S.W. 793; Lancaster

v. State, 36 Tex. Cr. R. 16, 35 S.W. 165; Dies v. State, 56 Tex. Cr. R. [32] 36, 117 S.W. 979; Mason v. State, 15 Tex. App. [534] 549; Felder v. State, 59 Tex. Cr. R. 144, 127 S.W. 1055; Rahm v. State, 30 Tex. App. [310] 313, 17 S.W. 416, 28 Am. St. Rep. 911; Hatchell v. State, 47 Tex. Cr. R. [380] 385, 84 S.W. 234; Garello v. State, 31 Tex. Cr. R. [56] 61, 20 S.W. 179; Vann v. State, 48 Tex. Cr. R. [11] 15, 85 S.W. 1064; Wright v. State, 37 Tex. Cr. R. 146, 38 S.W. 1004; Franklin v. State, 38 Tex. Cr. R. [346] 347, 43 S.W. 85.'

"It is true this court has reversed some cases where even such charge was given. But they are exceptions, not a rule. Appellant cites some of them. Each case in this respect must rest on its own facts."

The two Oklahoma cases relied upon by defendant, Perdue v. State, 40 Okla. Cr. 9, 266 P. 514, and Haynes v. State, 45 Okla. Cr. 172, 284 P. 74, do not support the contention of defendant. The Perdue Case does not involve the question under consideration, but is decided on an entirely different proposition. The Haynes Case was a liquor case, where defendant was given five years in the penitentiary, and a fine of $500. This sentence was reduced to a term of one year, and a fine of $500. The facts in that case are not at all similar to the facts in the instant case.

The remarks of the county attorney in his argument should contain a full discussion of the issues involved in the case, and the legitimate argument on the part of the defendant. His argument will be considered and construed in reference to the evidence, and in order to constitute reversible error the impropriety indulged in must have been such as may have influenced the verdict. Williams v. State, 4 Okla. Cr. 523, 114 P. 1114; Morgan v. State, 9 Okla. Cr. 22, 130 P. 522; Sweet v. State, 51 Okla. Cr. 202, 300 P. 418; Brown v. State, 52 Okla. Cr. 307, 4 P. 2d 129; Gee v. State, 53 Okla. Cr. 383, 12 P. 2d 547; Baxter v. State, 43 Okla. Cr. 33, 277 P. 287; Harmon v. Territory, 15 Okla. 147, 148, 79 P. 765.

The court sustained the objection of counsel for defendant to the argument of the county attorney. The jury was admonished to not consider it. The court, in sustaining the objection, said:

"You can make just as effective an argument without saying that about the defendant." Smith v. State, 6 Okla. Cr. 380, 118 P. 1003; Gunnells v. State, 7 Okla. Cr. 98, 122 P. 264; Gardner v. State, 5 Okla. Cr. 531, 115 P. 607.

The county attorney, according to the record, asked the jury to disregard anything he said that was not supported by the evidence. The defendant was given the minimum punishment provided by the statute. St. 1931, § 1891, 21 Okla. St. Ann. § 1720. There is nothing to indicate that the jury was influenced by passion or prejudice.

It is the judgment of the court that the sentence in this case should be affirmed, and it is so ordered.

DAVENPORT, P. J., and DOYLE J., concur.