Robert Clyde SANDERS, Appellant,

v.

UNITED STATES of America,
Appellee.

Joe Starr GULLAHORN, Jr.,
Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 5374, 5375.

United States Court of Appeals
Tenth Circuit.

Oct. 20, 1956.

William L. Bromberg, Denver, Colo., for appellants.

Melvin L. Robins, Asst. U. S. Atty., Albuquerque, N. M. (Paul F. Larrazolo, U. S. Atty., Albuquerque, N. M., with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

Drawn under 18 U.S.C.A. § 2113, the indictment in this case contained two counts. The first count charged that Robert Clyde Sanders and Joe Starr Gullahorn, Jr., entered the Sandia Base Agency of the Bank of New Mexico, a banking institution the deposits of which were insured by the Federal Deposit Insurance Corporation, with the intent then and there to steal money and property of such bank in excess of $100; and the second count charged that such persons stole, 'took, and carried away from the building occupied by the Sandia Base Agency money in excess of $100 belonging to and in the care, custody, control, management, and possession of the Bank of New Mexico. Both of the defendants were found guilty on both counts and were sentenced to imprisonment.

One ground urged for reversal is that prejudicial exhibits with no bearing upon the trial of the issues were brought into the court room. The robbery occurred during the weekend and was discovered Monday morning. A special agent for the Federal Bureau of Investigation testified in detail concerning the conditions at the branch bank shortly after discovery of the robbery. And after qualifying as an expert, he testified that in his opinion the door to the safe was removed by the use of a crowbar, a prybar, or some other heavy instrument. At a later juncture in the trial another witness testified that he conducted a business located about four miles from Sandia Base; that on Friday before the robbery during the weekend, one of the appellants came to the place of business looking for a crowbar; that the witness did not have a crowbar in stock; that he showed the appellant a pinchbar; and that the appellant said he did not want a pinchbar but did want a five-foot crowbar. With that background, a crowbar and a pinchbar were produced in court. It was not contended that either of such exhibits was used in connection with the commission of the robbery and they were not admitted in evidence. They were produced and exhibited to the jury for the sole purpose of demonstrating the respective sizes and shapes of crowbars and pinchbars as throwing light upon the kind of instrument one of the appellants sought to obtain and the kind he rejected. And it is well settled that when the proper foundation has been laid, articles of personal property such as models, tools, or implements may be displayed in the presence of the jury for purposes of illustration. State v. Blancett, 24 N.M. 433, 174 P. 207; Peoples v. Commonwealth, 147 Va. 692, 137 S.E. 603; State v. Roy, 220 La. 1017, 58 So.2d 323. The foundation having been laid, it was not error to use the exhibits for the purpose of illustration.

Another ground urged for reversal is the admission in evidence of three gas masks. The essence of the argument is that there was no showing that the masks were connected in any way with the perpetration of the offenses laid in the indictment or that they were capable of being used in the commission of such offenses, and that their admission in evidence was prejudicial. Evidence was adduced tending to show that one of the appellants was near the branch bank a day or two prior to the time of the commission of the offenses charged in the indictment; that one of them sought to purchase a crowbar a day or two prior to the time of the commission of the offenses; that a heavy instrument of some kind was used in removing the door from the safe; and that some of the currency stolen from the bank was in the posses-

sion of one of the appellants. The appellants resided in Phoenix, Arizona, and they were both in that city soon after the commission of the robbery of the branch bank. Three books or booklets entitled or denominated "Safe Manuals" were found underneath the seat of the sofa in the residence of one of the appellants and the three gas masks were found in a cupboard. The manuals outlined technical procedure for opening safes. And one of them stated in substance that some safes are equipped with gas in a bottle on the inside of the door; that if the lock or bolt bars on such a safe are driven out of position, the bottle may be broken and the gas escape; that one opening such a safe by means of driving the lock or bolt bars out of position may become the victim of tear gas; and that the application of soda and water tends to neutralize the effect of tear gas. The manuals and gas masks were all admitted in evidence. Later, the manuals were withdrawn and the jury was instructed not to consider them. The gas masks remained in evidence. It is the generally accepted rule that in a case in which the defendant is charged with the offense of burglary, after proof of the burglary has been introduced the prosecution may show that the defendant had burglar tools or implements in his possession soon after the time of the commission of the offense and may introduce such tools or implements in evidence. White v. United States, 5 Cir., 200 F.2d 509, certiorari denied, 345 U.S. 999, 73 S.Ct. 1142, 97 L.Ed. 1405; Starchman v. State, 62 Ark. 538, 36 S.W. 940; Miller v. State, Tex.Cr.App., 50 S.W. 704; Cornwall v. State, 91 Ga. 277, 18 S.E. 154; State v. Lynch, 195 Iowa 560, 192 N.W. 423; People v. Urban, 381 Ill. 64, 44 N.E.2d 885, 143 A.L.R. 1194. The manuals and the gas masks were sufficiently adaptable for use in preparing for and effectuating the burglarizing of a safe that they fell within such rule.

■ The residence in which the manuals and gas masks were found was searched pursuant to a search warrant. The search warrant authorized the seizure of currency, coins, tools, equipment, and clothing. It did not expressly authorize the seizure of books, records, and papers. The search was not one of a general exploratory nature unrelated to the burglary and robbery of the branch bank. It was a good faith search directed specifically to tools and equipment believed to have been used in effecting the robbery, and to currency and coins believed to have been stolen from the branch bank. The possession of the manuals and gas masks constituted a circumstance indicating that the defendants had sought guiding information respecting techniques, methods, and means of opening a safe and had immediately at hand instrumentalities appropriate for protecting themselves against the effects of tear gas while engaged in the opening of a safe. Falling within that class, the gas masks were subject to seizure and their introduction in evidence did not contravene any of the constitutional rights of the appellants. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

■■ In the course of the opening statement of the Assistant United States Attorney, it was said that evidence would be introduced showing that one of the appellants openly boasted of being a bank robber. But upon objection being interposed, the court expressly directed the jury to disregard the statement. And it is enough to say without elaboration that appellants suffered no prejudice arising out of the making of the statement. At two junctures in the course of the closing argument of the Assistant United States Attorney, it was stated that the appellants were thugs. In both instances objection was made. In the first instance the court stated that it was reasonable comment. In the second instance, the court directed the attorney not to refer to the appellants in that manner any more, and the court directed the jury to disregard the word. And at a third juncture in the course of the closing argument, it was said in substance that the appellants were educated; that they did a good job,

of breaking into the safe; and that it was a very cleverly planned job. A reasonable range of latitude is to be allowed counsel in drawing inferences and deductions from the facts and circumstances shown in the trial and in commenting thereon. The reference to the appellants as thugs and the statement that they were educated and did a cleverly planned job in breaking into the safe were within the permitted range of argument and do not warrant reversal of the judgments. Haskette v. State, 65 Okl.Cr. 299, 85 P.2d 761; Hallman v. State, 36 Ala.App. 592, 61 So.2d 857; Gray v. United States, 8 Cir., 14 F.2d 366; United States v. Markham, 7 Cir., 191 F.2d 936; Herman v. United States, 4 Cir., 220 F.2d 219, certiorari denied, 350 U.S. 971, 76 S.Ct. 444.

Other contentions are advanced but they are without substance and do not merit discussion.

The judgments are severally affirmed.