Darwin Dean PERRYMORE, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–13036.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1961.

Howard, Carr & Harris, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen Watts, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

The plaintiff in error, hereinafter referred to as the defendant, was charged by information in the District Court of Tulsa County, with the crime of robbery with firearms after former conviction. He waived trial by jury and filed two affidavits in compliance with the alibi statute, 22 O.S. 1951 § 585. A non-jury trial was conducted before the Honorable Raymond W. Gra-ham, Judge of the District Court in and for Tulsa County, Oklahoma. After both sides had rested the court found the defendant guilty as charged and fixed his punishment at 35 years in the State Penitentiary at Mc-Alester, Oklahoma. Thereafter a timely appeal was perfected to this Court. Although there are numerous assignments of error they will be considered under five major contentions. It is first contended by the defendant that the trial court erred in refusing to allow the defendant to test the credibility of the state's first witness, Mr. Edwin R. Curry. Defendant's contention is predicated on the court's refusal to allow counsel for defendant to place sun glasses and a hat upon each of two defense witnesses and question the witness Curry as to whether so attired they resembled the man who robbed him. We believe the court properly refused to allow counsel for defense to pursue this type of theatrical tactic because the witness had already stated that he had never seen either of the witnesses before and had made a positive identification of the defendant, Darwin Dean Perrymore. Moreover, the hat and glasses which counsel for defendant sought to place upon the witness were not in evidence nor were they shown to be the hat and glasses worn by the person who robbed him.

It is next contended by the defendant that the court erred in admitting copies of statements filed earlier by the accused to comply with the alibi statute, in an attempt by the state to impeach the testimony of defense witnesses Mary Ann Driggs and Frances Fralicks. The first affidavit was introduced by the state without objection being raised by the defendant, and the second affidavit was objected to on the grounds that no sufficient predicate had been laid by the state for its introduction and for the further reason that it being only a copy, its admission violated the best evidence rule. We believe these affidavits having been filed by the defendant in the case pending against the accused, could be properly considered by the court sitting both as judge and trier of fact. It is elementary in a non-jury case that a court

may take judicial notice of affidavits properly filed in the cause pending before him. The originals thus being before the court we hold that the admission of the copies did not constitute error. In this connection it is further contended by the defendant that the court erred in refusing to allow him to question his witnesses concerning an obvious error in the date recited in said affidavits and refusing to allow said witnesses to explain the contradiction between their testimony given under oath at the trial establishing an alibi for the accused and the erroneous date in the affidavits filed in compliance with the alibi statute. We observe in this connection that no offer of proof was made by the defendant as to what the testimony of the witnesses would be were they allowed to answer. In order to preserve an objection to the exclusion of evidence, the proper question must be asked, and on objection, offer made showing what the evidence will be, its purpose, and all facts necessary to establish admissibility. Wilkerson v. State of Oklahoma, Okl.Cr., 364 P.2d 709; Stanley v. State, 50 Okl.Cr. 169, 296 P. 504, and cases cited therein. It does appear from the record that the witnesses were allowed to testify that on the date contained in the affidavit the accused was incarcerated in the Tulsa County jail and both witnesses testified that they were with the accused on the evening and at the time the alleged robbery occurred. We cannot see that any injury resulted from the court's refusal to allow the defendant to pursue this line of questioning.

■ It is next contended that the trial court erred in requiring defense witness William L. Clark to answer questions which incriminated him in a criminal case not germane to the cause under consideration. We believe that this contention is meritorious. See 40 Cyc. 2534. In order to fully understand the contention herein raised it will be necessary to refer to certain portions of the record which reveal the following proceedings:

"Q. Did you also hold up the Red Bud Food Store on the same day, the 28th? A. I would like to answer this question this way: I have been accused of that crime and charges are pending here in Tulsa on it. At this time, I refuse to commit myself one way or the other. Mr. Simms: If the Court please, when that man got on the stand and admitted that other hi-jack, he's waived any right he has to immunity and we request the court to instruct him to answer the question.

"Mr. Gresham: At this time.

"Mr. Harris: Just note our exception, if it pleases the court.

"The Court: All right. You may answer the question.

"Mr. Harris: I'd advise the man at this time, of his own constitutional rights.

"Mr. Gresham: He has waived his rights.

"Mr. Simms: The court advises the man as to his rights not the lawyer in the Courtroom.

"Mr. Harris: If it pleases the Court—

"Mr. Simms: When he took the stand, he waived his right to immunity.

"Mr. Harris: I would like to put in the record at this time, as far as—at this time I advise this defendant that he does not have to answer the questions if he so desires, on the grounds it might further incriminate him. If Your Honor chooses to find me in contempt, I would suggest as for as that's concerned, to go ahead.

"Mr. Gresham: I might suggest, Your Honor Please, that the attorney should be the one to be found in contempt.

"Mr. Harris: I think I owe this much duty to this man, if it pleases the Court.

"The Court: The defendant may answer the question.

"Mr. Harris: Note our exception.

"A. I am sorry, I just don't remember about that Red Bud Market at this time.

"Q. (By Mr. Gresham) You don't remember? A. That's right.

"Q. That happened the same day as this other place down here, didn't it, this drug store?

"Mr. Harris: To which we object as having been asked and answered, being repetitious.

"The Court: Overruled.

"Mr. Gresham: Didn't it?

"Mr. Harris: Pardon me?

"The Court: Overruled.

"Mr. Harris: Note our exception.

"The Court: Allowed.

"Q. (By Mr. Gresham) Didn't it Clark?

"Mr. Harris: To which we object unless he knows of his own personal knowledge.

"Mr. Gresham: Let him answer the question; you have objected.

"A. Would you repeat that question, please?

"Q. (By Mr. Gresham) The armed robbery to Red Bud happened the same day as the armed robbery down here at this Curry Drug Store that you just told us you committed, didn't it? A. From the information I have, the robbery there did happen the same day; that is correct.

"Q. But you don't remember about the one at the Red Bud, but you remember all about. this one down here at Curry's Drug Store?

"Mr. Harris: To which we object as having been heretofore answered; this is repetitious.

"Mr. Gresham: This has not been.

"The Court: Overruled.

"Mr. Harris: Note our exception, been improper cross-examination.

"The Court: Allowed.

"A. Okay, I hi-jacked the Red Bud Market down there, if that's what you want to know; I'm ready to plead guilty to it anyway.

"Q. (By Mr. Gresham) You hi-jacked the Red Bud Market? A. I hi-jacked the Curry Drug Store.

"Q. Who was out with you on the Red Bud—

"Mr. Harris: To which we object, if it pleases the Court, not being relevant, incompetent, immaterial, and this man certainly is not required to answer that question.

"The Court: Overruled.

"Mr. Harris: Note our exception.

"Q. (By Mr. Gresham) Who was with you, Clark? A. I'm sorry, I can't answer that question.

"Mr. Harris: If it pleases the Court, he ought to be advised—

"Q. (By Mr. Gresham) What do you mean you can't answer the question?

"Mr. Harris: Let me make a record here, Tom, if it pleases the Court. At this time, I would ask the Court to admonish this witness that he does not have to answer any further questions in regared to this Red Bud Food Store, or whatever it is, that Mr. Gresham is cross-examining him on, as being completely irrelevant, incompetent, and he can assert his constitutional rights.

"Mr. Gresham: He has waived those rights, if Your Honor please, by taking the stand. .

"Mr. Harris: He has not.

"The Court: Objection is overruled.

"Mr. Harris: Note my exception."

The witness's earlier testimony revealed that he had been convicted of the crimes of forgery, car theft, armed robbery, and rape, and was at the time of the trial serving a life sentence. His credibility and reliability as a witness would under our view entitle his testimony to the least credence. We do not view this violation of his right as injuring the accused under the particular facts of this case, however there are circumstances which could arise where the tactics used by the state herein could substantially prejudice the rights of an accused. We therefore condemn the action of the

prosecutor and the court in requiring this witness to give testimony that incriminated him and direct that the courts of this state shall not in the future require any witness to incriminate himself upon a collateral charge not germane to the issues presented at the proceeding in which he is a witness.

It is next contended that the evidence was wholly insufficient to support the judgment of the court. Three of the state's witnesses positively identified the accused as the robber who entered Mr. E. R. Curry's store on the evening of June 28, 1960, and took money and drugs at gun point. Testimony on behalf of the defendant was in sharp conflict with that of the state. This court has repeatedly held: "Where the evidence of the state and of the defendant is in direct conflict, and the evidence of the state is sufficient to sustain a conviction, the Criminal Court of Appeals will not, in absence of error of law, reverse a conviction." See Haskette v. State, 65 Okl.Cr. 299, 85 P.2d 761.

It is the defendant's last contention that the punishment was excessive. We believe the rule is well settled in Bow v. State, Okl.Cr., 273 P.2d 141, wherein this court in the body of the opinion quoted from Kittrell v. State, Okl.Cr., 253 P.2d 853, 855, wherein it was stated: "This court is cognizant of the seriousness of the offense which was committed by the defendant and that such criminal offenses are on the increase in Oklahoma and particularly in the areas of large population. The Legislature in its wisdom has provided that where a robbery is committed with firearms, the punishment in extreme cases could be the death penalty. We do not feel that the epidemic of robberies that are being committed can be checked by light sentences of 5, 10, or 15 years. Where the offender has served a previous term or terms in the penitentiary, he should be given life imprisonment and where he is a hardened criminal with long record behind him the court in the exercise of discretion in extreme cases should sentence him to death in the electric chair. We feel that the imposition of these severe penalties will cause the robbers to shun Oklahoma but until they know that the punishment which will be meted out to them will be severe and certain, they will probably continue to terrorize our citizens. Instead of the defendant having grounds to complain of the severity of the punishment, he should feel himself fortunate that he was not given life imprisonment, which he deserved." We are therefore of the opinion that the punishment imposed by the trial court being substantially less than that which could be imposed was not excessive. The judgment and sentence is accordingly affirmed.

NIX, P. J., and BRETT, J., concur.