## Commonwealth *v.* LaCamera, Appellant.

Argued September 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Pearse O'Connor,* for appellant.

*John Q. Stranahan,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, J., November 15, 1962:

The question to be determined in this appeal is whether police officers, while lawfully searching premises under a valid search warrant describing "numbers slips," may lawfully seize treasury tickets and baseball pool tickets, slips which are commonly used in conducting a somewhat similar type of lottery in which the winner is also determined by numbers.

On June 1, 1961 a county detective obtained a search warrant from a justice of the peace, authorizing him to search the premises of the defendant for "numbers slips." When the officers knocked on the door the defendant's wife answered but did not open the door. Instead she said, "Just a minute"; went to a desk in the front room; put some papers in a cardboard box and disappeared into another room. When she did not return to the door, the officers went around the house to the rear door and through the kitchen window saw her come into the kitchen from the cellar. She then admitted the officers through the back door. The search warrant was read to her and one of the officers proceeded to search the premises. In the cellar they found some paper ashes in a small stove and underneath some soiled clothing found a small brown paper box containing seven small packages of treasury tickets and a large paper bag containing seven packages of baseball pool tickets. In a china closet on the first

floor the officers found a small book with a "rundown" (summary) of runs scored in baseball games. The defendant came to the house while the officers were still there but after they had completed their search. He examined the search warrant and told them they didn't have anything on him because the warrant read one thing and they had something else in the bag.

August Angel, a printer, testified that the treasury tickets had been printed in his shop for the defendant, who paid for them. The exhibits, consisting of the treasury tickets, baseball pool tickets and the baseball rundown sheet, were admitted in evidence over the objection of the defendant. No evidence was presented by the defendant, his only contention being that the evidence was obtained by an illegal seizure in that the affidavit and search warrant described the things to be searched for as "number slips" or "numbers slips" whereas the exhibits did not come within that description.

The Commonwealth produced Detective Vance, who testified that he considered numbers slips in the broad sense of the word to mean any illegal numbers activity regardless of whether it was the commonly known three digit form of "numbers racket" or other forms of slips based on the Treasury balance. The Commonwealth also produced a State Policeman who was qualified as an expert and he testified that he believed treasury tickets were a form of "numbers slips" in the broad sense of the word. The distinction between a three digit number selected by the player and the five digit number assigned to the player, both of which numbers are picked at random, is a nebulous distinction. We are of the opinion that any slip of paper used in an illegal lottery where the winner is determined by the selection of a number is a "numbers slip."

Even if we should make a distinction between a "numbers slip" and a treasury ticket or baseball pool,

we still believe that the evidence obtained in this case was properly admitted and was sufficient to justify a conviction. In *Com. v. Schwartz*, 82 Pa. Superior Ct. 369, we pointed out that the initial purpose of a search warrant was to recover stolen goods. In such a case the owner having had possession of the goods was required to describe them with a considerable degree of particularity. However, such particularity should not be required in a case such as the one now before us since the affiant has neither owned nor had in his possession the gambling paraphernalia and therefore cannot be expected to describe it with the same particularity as in the case of goods which had been stolen from him. At page 373 Judge KELLER, later President Judge, said: "It is, therefore, sufficient to describe them as intoxicating liquors; implements and materials designed and intended for the manufacture of intoxicating liquors; gaming implements, etc., without more; nor is it necessary for the affiant to guess at the various kinds of intoxicating liquors, their quantity, or the character of the apparatus used in their manufacture, etc., which may be concealed on the premises to be searched. In such cases a general description is within the language of the Constitution; for it is not practicable to give any other: . . . ."

In *United States v. Joseph*, 174 F. Supp. 539, 545, the court stated: "It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search." In this case the Federal agents seized money, even though under the search warrant they were searching for lottery slips, rundown sheets, records and other paraphernalia and equipment which were being used in violation of the law forbidding lotteries.

In the case of *Steele v. United States*, 267 U. S. 498, the search warrant named merely "cases of whiskey." The officers seized 150 cases of whiskey, 92 bags of

whiskey, 15 gallon cans of alcohol, 3 cases of gin and a corking machine. The United States Supreme Court held that the description in the search warrant, "cases of whiskey," was "quite enough" to include the other exhibits.

In *Nuckols v. United States,* 99 F. 2d 353, the search warrant authorized a search for gambling tables, race horse slips and gambling paraphernalia. Certain "betting slips" were seized. On page 355 of the opinion the Court stated: "In the search of a gambling establishment the same descriptive particularity is not necessary as in the case of stolen goods."

In the case of *Palmer v. United States,* 203 F. 2d 66, the agents seized pistols while searching under a warrant for narcotics.

In the case of *Sanders v. United States,* 238 F. 2d 145, a bank robbery case, the warrant referred to currency, coins, tools, equipment and clothing. The agents seized three gas masks and some safe manuals.

In the case of *Bryant v. United States,* 252 F. 2d 746, the search warrant was for heroin only. The agents seized gelatin capsules and milk sugar, an ingredient used for diluting narcotics.

In all of these cases the items seized, although not specifically mentioned in the warrant, were admitted in evidence.

Counsel for appellant cites the case of *United States v. Lefkowitz,* 285 U. S. 452. In that case the government agents, without a search warrant, ransacked an office looking for evidence which might aid in the conviction of the defendants of a crime. The search was obviously an exploration by them in an effort to find some reason for arresting the defendants. At page 465 the Court stated: "The decisions of this court distinguish searches of one's house, office, papers or effects merely to get evidence to convict him of crime, from searches such as those made . . . for the seizure of

counterfeit coins, burglars' tools, gambling paraphernalia and illicit liquor in order to prevent the commission of crime."

We are of the opinion that the search in the present case was not unreasonable and was not out of proportion to the purpose for which the search was conducted.

Judgment of sentence affirmed.