**William Guy KING, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15041.**

Court of Criminal Appeals of Oklahoma.

June 11, 1969.

Warren Watkins, Grove, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Robert D. McDonald, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

William Guy King, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Wagoner County, with the crime of Robbery With Firearms; was sentenced to serve fifty years in the state penitentiary at Mc-Alester, and from said judgment and sentence, a post conviction appeal has been granted by this Court. On appeal the defendant argues several assignments of error, and we deem it necessary to briefly set forth the evidence adduced on the trial.

In the early morning of October 25, 1966, at approximately 1:00 a.m., Mrs. Joyce Fulton was in her home, where she lived alone, when she heard a noise in the yard and later at the back door. The door was forced open and three men wearing masks entered the home. She was beaten, shot and tied, and her home ransacked by the three masked men who had placed a pillow case over her head and fired a tear gas gun into it in an effort to force her to reveal where she kept her money. She identified one of the masked men who had spoken to her during the robbery, as being the defendant, William Guy King, whose voice she had previously heard at the preliminary hearing and at which time the defendant had testified prior to trial in the instant case. She was positive in her identification. After the robbers had left, she partially untied herself, loaded a .22 caliber rifle and hobbled to the nearby home of her parents, Mr. and Mrs. Hensley. Her parents untied her and called the night jailer, who notified Officers Leonard Gross and Charlie Paine of the robbery, whereupon they proceeded to the vicinity of the complaining witness' home. Upon arriving at a country road, they observed an automobile approaching them and they blocked the road, alighted from the car with a shotgun, recognized the defendant as the driver of the car, and ordered him to stop, but he backed out and went east on Highway 51. Officer Paine fired a shot, but they did not pursue the car, as they heard the screams of the complaining witness.

After having dispatched Officers Gross and Paine to the scene, the night jailer notified Sheriff Garrison, picked him up and they proceeded to Mrs. Fulton's home, where they observed Mrs. Fulton, who had blood in her hair, mouth and nose and one eye was swollen almost shut. Sheriff Garrison testified that the house had been ransacked and was in shambles, and they found an empty .32 caliber cartridge case which was later turned over to Mr. Ray Lambert of the State Crime Bureau, together with the bullet removed from Mrs. Fulton's arm at the hospital where she was taken shortly after the Sheriff arrived at the scene.

After the Sheriff's investigation at the premises, he immediately proceeded to look for the defendant and near Mr. King's home, he observed him driving a 1964 Chevrolet. He followed him into the driveway where he placed him under arrest and removed a mask from the defendant's

vehicle. The coat which the defendant was wearing at the time of his arrest, contained a tear gas gun, a .32 Colt pistol, a light brown pair of leather gloves stained with blood, three $2.00 bills stained with blood, and a blackjack. The .32 Colt was turned over to Ray Lambert of the State Crime Bureau for examination. Lambert testified that the cartridge found at the scene had been fired from the .32 Colt and that after this cartridge had been compared with the cartridge test-fired, it was his opinion that the cartridge found at the scene was fired from the .32 Colt taken from the defendant. He further testified that the bullet removed from Mrs. Fulton's arm had similar markings to a bullet test-fired from the .32 Colt, but he was unable to testify positively whether or not the bullet taken from Mrs. Fulton's arm had been fired from the .32 Colt.

Thereafter, the Sheriff procured a search warrant from a Justice of the Peace, and a search of the trunk of defendant's car produced a sewing machine, typewriter, purse, pillow case, and miscellaneous items taken from Mrs. Fulton's home the night of the robbery.

Aaron Lee Speck, an employee of the defendant at the time of the robbery, testified that he, the defendant and a Mr. Ford went to Mrs. Fulton's home on the night of the robbery; that they each wore masks provided by the defendant and that they entered the home of Mrs. Fulton after Ford had cut the telephone wires, they robbed Mrs. Fulton and that he had carried some of the stolen articles to the defendant's car. After leaving the scene of the robbery, he testified that the defendant let Ford out in "Colored Town," and let him out near his home.

William Guy King then testified in his own behalf. He stated that he was 61 years old, had lived in Wagoner County for 13 years; and owned King's Recreation. He testified that he saw Ellis Garrison the morning of October 25, 1966, at his house. He stated that when he came home he drove his car in the garage and the Sheriff came in the driveway behind him. This was about 1:30 or 1:45. The Sheriff placed him under arrest and searched him. He further testified that at about 10:30 at night on October 24th, he was at home, when he received a call from a man named Blackie, who said he would like to come out and visit him. The defendant said, "No," and asked where Blackie was. Blackie told him he was at the Texaco Station on Highway 69; the defendant then told him he would meet him just as soon as he could. At about 20 minutes until 11:00 he met Blackie at the junction of Highways 69 and 51, at a beer tavern. Blackie told him, "Come and go with me * * * I've got to go out here and collect some money." The defendant agreed, and Blackie told him to go and park on the road and wait for him. He did not know what kind of car Blackie was driving, as he did not see his car. The defendant was in his 1964 Chevrolet, and he went to the designated place to wait for Blackie. He turned his car around and waited for about an hour and a half and fell asleep. He then stated that he had loaned Blackie his jacket at the tavern, and that at the time the Army jacket had a .22 tear gas gun in the pocket. He stated that Blackie finally came to his car, threw his jacket in the car and said, "Here's your coat and I'll see you * * * in about five or ten minutes." The defendant waited, but Blackie never did come back. When asked if Blackie put anything in the trunk of his car, the defendant stated that while he was waiting he got thirsty and opened the trunk of his car and got a 7–Up, and did not close the trunk tight after doing so, and did not really know whether Blackie had put anything in the trunk or not. When Blackie did not return, the defendant decided he had "been had" and started to go home. As he approached the highway he saw another car and they slapped a white light on and jumped out and shot. He stated he did not know who they were and certainly did not know they were the police, so he backed out and got away.

Fletcher Young, Mack Clardy, Perry Clu Gaylor and Bill Lancaster, all testified on behalf of the defendant that he bore a reputation for good character in the community.

On appeal, defendant contends that the evidence taken from his automobile under authority of the search warrant was not admissible in that the State did not show the validity of the affidavit and search warrant.

■ From the record it appears that the defendant failed to file a Motion to Suppress the evidence obtained, but merely objected to the admission of the evidence complained of. Moreover, since the record does not reflect either the affidavit for the search warrant, or the search warrant itself, there is nothing preserved for review on appeal. In the first paragraph of the Syllabus of Winer v. State, 36 Okl.Cr. 316, 253 P. 1025, this Court held:

"Error is not presumed, but must be made to affirmatively appear in order to avail a defendant. Where a defendant contends that a search warrant is invalid, the burden is on him to establish the facts which render it invalid."

Under the authority above set forth, we are of the opinion that this assignment of error is without merit.

■ The defendant alleges in his second, third and fourth propositions that the trial court should have excluded evidence pertaining to the victim of the robbery being shot, ballistics testimony relative to that shooting, and photographs of the scene of the crime, for the reason it was incompetent and irrelevant. In the second paragraph of the Syllabus of Zeigler v. State, 76 Okl.Cr. 34, 133 P.2d 912, this court held:

"The introduction of evidence in a criminal case is subject to such restrictions or limitations as the trial court in its discretion may decide."

■ Certainly, in a Robbery with Firearms case, where a material element of the crime is force or fear, the shooting of the victim is significantly material in prov-

ing that element of the crime, and it is not inadmissible merely because it may prove the defendant guilty of another crime. See Parnell v. State, Okl.Cr., 389 P.2d 370, and Cornelius v. State, Okl.Cr., 438 P.2d 295. Likewise, the ballistics testimony relative to said shooting and the weapons in evidence are material. Photographs of the scene of a crime are particularly pertinent and material, and they are admissible as long as they are correct and faithful representations of the object sought to be shown. See Glenn v. State, Okl.Cr., 444 P.2d 839.

■ Finding this assignment of error without merit, we shall consider defendant's last contention that the sentence of fifty years imprisonment assessed by the jury, is excessive. In Syllabus No. 5 of the case of Perrymore v. State, Okl.Cr., 366 P.2d 770, this Court stated:

"The question of alleged excessiveness of punishment must be determined by study of all facts and circumstances in each particular case."

The victim in the instant case was beaten, shot with a deadly weapon, bound and tied, and subjected to tear gas, in an effort to force her to reveal where she kept her money. Death is a possible punishment for Robbery With Firearms. 21 O.S. 1961, § 801. This type of torture, shooting robbery, must surely be that kind contemplated by the statute which would justify the death penalty. We are of the opinion that where the maximum years of punishment is unlimited and the punishment could be death, a sentence of fifty years by the jury is not excessive.

■ For all of the reasons above set forth, we are of the opinion that the trial court did not abuse its discretion in ruling on the admission of evidence; that the evidence was properly admitted and sustained the jury's verdict; the assessment of punishment thereon was not excessive; and the judgment and sentence appealed from should be and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.