**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Bolivar DePUGH, Defendant-Appellant.**

**No. 71–1062.**

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1971.

Rehearing Denied Feb. 23, 1972.

917

Victor R. Ortega, U. S. Atty. (Michael P. Watkins and Richard J. Smith, Asst. U. S. Attys., on the brief), for plaintiff-appellee.

James R. Toulouse, of Toulouse, Moore & Walters, Albuquerque, N. M., for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS, and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this bizarre case the jury found defendant-appellant guilty of all nine counts of an indictment charging him with possession of silencers, a machine gun, and various types of grenades which had not been registered in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, U.S.C. Ten-year concurrent sentences were imposed on each count.

Defendant asserts multitudinous errors relating to practically every facet of

the trial. A brief recitation of the background facts is needed for an understanding of the problems.

By his own statement, defendant was one of the principal founders and the national coordinator of an organization known as the Minutemen which was formed to cope with a supposedly inevitable Communist takeover of the United States. In 1967, he was convicted of a federal firearms violation in the Western District of Missouri. In 1968, he and others were indicted in the Western District of Washington on a charge of conspiracy to rob banks. Defendant did not surrender to serve the Missouri sentence but, in the vernacular, went underground. He and various companions hid at Hesperus, Colorado, Pinos Altos, New Mexico, and probably other places, before appearing at Williamsburg, New Mexico, where a member of the group rented a house. Agents of the Federal Bureau of Investigation located defendant at Williamsburg and on July 12, 1969, arrested him under a warrant issued pursuant to the Washington indictment. On July 16 and 17, the rented premises were searched under a search warrant and a veritable arsenal of weapons and destructive devices was seized. He was thereafter indicted and tried in New Mexico on the charges with which we are concerned.

The prime claim on this appeal is that the defendant was denied Sixth Amendment rights because of the failure of the district court to appoint advisory counsel to assist him in his pro se defense. Consideration of the issue requires a rather detailed discussion of the surrounding circumstances.

At the time of the trial defendant was 47 years old. He was not an unsophisticated criminal defendant. He had been the accused in the following reported criminal cases: DePugh v. United States, 8 Cir., 393 F.2d 367; DePugh v. United States, 8 Cir., 401 F.2d 346; and United States v. DePugh, 8 Cir., 434 F.2d 548. He had six years of college level education, was a chemist by profession, and had been a successful businessman. He had published over 200 scientific articles, and more than 100 products had resulted from his work as a research chemist. According to his own testimony, he was an expert "in the fields of chemistry, demolition, and firearms."

The arrest occurred in the early evening of July 12. He was taken to Albuquerque where, at about 2:15 A.M. on the 13th, he was arraigned before a United States commissioner who appointed an attorney for him. After the return of the indictment, the district court promptly appointed an attorney for him. The attorney filed various motions, including one to suppress all the evidence obtained by the search. Later, the defendant appeared in court before Judge Bratton with his appointed counsel, Mr. Threet, who said that the defendant desired to appear pro se. The court fully explained to the defendant his right to have appointed counsel free of cost to him and said that he would be glad to hear from the defendant if he wanted another attorney. The defendant replied: "I don't believe that any other attorney would be any better for this situation than Mr. Threet has been." The court pointed out that "generally the same limitations as apply to an attorney would apply to you; that is as to the procedures and mechanisms, and all that; * * *."

Threet said: "it's not a question, I don't believe, of personality involved, it's a matter of tactics and trial tactics that Mr. DePugh desires to adopt for the purposes of this case." Defendant then said: "I realize my shortcomings in this matter, and it's with considerable reluctance that I make this choice. I feel that it is the lesser of two evils that I'm required to choose between." He then asked for the assistance of advisory counsel. The court said: "it's not feasible, at all, to have both counsel and defendant participate as lawyers in the trial of the case, and one try portions of it, and the other try portions of it." After further colloquy, the court inquired "you desire to conduct the entire

trial yourself, is that correct, Mr. De-Pugh?" DePugh answered "Yes, sir." The case was later transferred to Judge Payne and the defendant renewed his request for advisory counsel. In denying the request, Judge Payne said "I want to renew the offer to appoint a lawyer for you." The defendant said that he wanted to conduct his own trial but needed legal assistance.

The court appointed investigators to assist in trial preparation. Through arrangements with the United States Marshal, the defendant had available a well-equipped law library. He was permitted to use his own secretary. He had practically unlimited use of the telephone and unlimited contact with his witnesses and investigators before and during the trial.

A reading of the record and the trial transcript convinces us that the government is right in saying that the defendant is "articulate, eloquent, and highly knowledgeable about legal matters." We do not have the case of an obstreperous defendant. The trial was conducted with dignity and decorum. The conduct of the defendant in the courtroom was exemplary. After conviction, and at defendant's request, the court appointed an attorney to handle the appeal. Defendant later replaced the appointed attorney with retained counsel of his own choice, and the retained counsel have presented the appeal to this court.

The Sixth Amendment gives to the accused in criminal proceedings the right "to have the Assistance of Counsel for his defense." Section 1654, Title 28, U.S.C., provides that in federal courts "the parties may plead and conduct their own cases personally or by counsel" as permitted by court rules. Rule 44(a), F.R.Crim.P., says that a defendant is entitled to have counsel "unless he waives such appointment." The Criminal Justice Act of 1964 provides for the appointment of counsel for the defendant in a criminal case "[u]nless the defendant waives the appointment of counsel." 18 U.S.C. § 3006A(b).

The Supreme Court has said that the constitutional provision does not "require that under all circumstances counsel be forced upon a defendant." Carter v. Illinois, 329 U.S. 173, 174–175, 67 S.Ct. 216, 218, 91 L.Ed. 172; accord, Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309. The circuits have recognized the principle that "to compel a criminal defendant to be represented by counsel in all cases would conflict with his statutory and constitutional right to conduct and manage his own defense." Lowe v. United States, 7 Cir., 418 F.2d 100, 103, and cases there cited. A defendant "may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268.

The record shows that the defendant knowingly and voluntarily waived counsel. Having done this, he requested advisory counsel and the court denied the request on the basic premise of prevention of confusion. At the time, the record showed confusion because both the then appointed counsel and the defendant pro se had filed pre-trial motions. The courts have found no constitutional violation in the denial of advisory counsel. Lee v. State of Alabama, 5 Cir., 406 F.2d 466, 469, and cases cited at n. 6. In Bayless v. United States, 9 Cir., 381 F.2d 67, 71, where the defendant claimed an unconstitutional deprivation because of the appointment of advisory counsel, the court upheld the procedure. In some circumstances it may be wise to appoint advisory counsel. Mayberry v. Pennsylvania, 400 U.S. 455, 467–468, 91 S.Ct. 499, 27 L.Ed.2d 532 (concurring opinion of Chief Justice Burger).

In Leino v. United States, 10 Cir., 338 F.2d 154, 156, we said that "[t]he exercise of the right to assistance of counsel is subject to the necessities of sound judicial administration." While Leino was concerned with waiver of right to counsel, the principle stated has application here. In our opinion the ap-

pointment of advisory counsel is discretionary with the trial court. In some instances it may be valuable and in other instances lead to confusion. In the case at bar the defendant wished to control the trial tactics and "to conduct the entire trial" himself. The tactics which he adopted took advantage of pro se representation. He alone was fighting the might of the government. He developed the lines of testimony which he wished. He gave under oath an eloquent narrative statement in defense of the case made by the prosecution. He made an equally eloquent plea in his closing argument to the jury. Having obtained the advantages which he sought, he now says through his retained counsel that an advisory counsel should have been appointed. We believe that the appointment of such counsel is discretionary with the trial court and that, in the final analysis, abuse of that discretion is to be determined by whether the defendant received a fair trial. Accordingly, we turn to a discussion of the claimed trial errors.

■■ The arrest is said to be unlawful because the warrant was based on an invalid indictment charging conspiracy among a number of defendants and not naming DePugh in any overt act. An indictment need not charge that each member of the conspiracy committed an overt act. It is enough that one or more overt acts were committed by one or more of the conspirators. Jordan v. United States, 10 Cir., 370 F.2d 126, 128, cert. denied 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595. The requirement of a "plain, concise and definite written statement" of the crime charged, see Rule 7(c), F.R.Crim.P., is satisfied. The indictment follows statutory language, contains an adequate statement of an overt act to effectuate the object of the conspiracy, and is sufficient to inform the accused of the charge. Cf. United States v. Sterkel, 10 Cir., 430 F.2d 1262, 1263. In our opinion the indictment was valid and the arrest lawful. This makes unnecessary consideration of the jurisdictional arguments based on the claim of unlawful arrest.

■ The search warrant is attacked on several grounds, the first of which is inadequate description. The warrant covers a tract of land in the northeast half of a certain section and a house, an out-building, and two cars located thereon. There is no northeast half of a section. An error in description is not automatically fatal to a warrant. E.g. Martin v. United States, 10 Cir., 99 F.2d 236, 237, and Fine v. United States, 6 Cir., 207 F.2d 324, cert. denied 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417. The requirement of Rule 41(c), F.R.Crim.P., that the place to be searched must be described in the warrant is satisfied if the description is sufficient to enable the officers to ascertain the place to be searched. See Steele v. United State No. 1, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L. Ed. 757. Except for the obvious error in the land description, the warrant is quite specific. The name of the owner, Jimmy Montoya, is given as is the location with reference to Williamsburg and U. S. Highway 85. The description of the house suffices to identify it. An officer could, with reasonable effort, locate it. No claim is made that the search was made of the wrong house. The inadvertent description of the land is not fatal to the warrant.

■ The next ground is that the description of the items to be seized was not sufficiently particular. Five classes of items were enumerated, all of them subject to seizure if not registered. "Destructive devices," one of the terms used, is defined in 26 U.S.C. § 5845(f). As contraband, 49 U.S.C. § 781(b) (2) and 26 U.S.C. § 5845(a) (8), a lesser standard of particularity of description is required. Cf. Stanford v. Texas, 379 U. S. 476, 486, 85 S.Ct. 506, 13 L.Ed.2d 431. The warrant adequately described the items to be seized.

■ The affidavit underlying the search warrant is said to be insufficient to establish probable cause. Defendant asserts that the affidavit is based on

statements made after the arrest and without an adequate Miranda warning. We need not go into the conflicting testimony regarding such warning because the trial court was convinced, and we are convinced, that without consideration of those statements the affidavit is sufficient to establish probable cause. Affidavits are to be interpreted in a common sense manner with deference to the prior determination of the magistrate. United States v. Berry, 10 Cir., 423 F.2d 142, 144, and Edmondson v. United States, 10 Cir., 402 F.2d 809, 811–812. We believe that the commissioner acted in a reasonable and prudent manner and had probable cause to issue the warrant.

 Next it is argued that items not mentioned in the search warrant were improperly seized. The inventory of the property taken discloses an alarming quantity of weapons, destructive devices, explosives, and literature and a tape recording relating thereto. Much of the material was contraband. We deem it unnecessary to go into detail because we believe that all the items were properly seized under the principles stated in Sanders v. United States, 10 Cir., 238 F.2d 145, Mesmer v. United States, 10 Cir., 405 F.2d 316, and United States v. Berry, 10 Cir., 423 F.2d 142.

Defendant argues that the motion to quash the indictment should have been sustained. All counts of the indictment are the same except for reference to particular items and allege that each item

"had not been registered to them [the defendants] in the National Firearms Registration and Transfer Record as required by Chapter 53 Title 26 United States Code. In violation of 26 U.S.C. 5861(d) and 26 U.S.C. 5871."

 Allegedly, Chapter 53 does not require registration. For firearms obtained after the effective date of the Act registration procedures are covered by 26 U.S.C. § 5841(b). For firearms previously obtained the pertinent provision is § 207, P.L. 90–618, 82 Stat. 1235–1236. See also amendments to 26 U.S. C. § 5801, Supp. V at 2070, the official version of the United States Code under 1 U.S.C. § 204(a). The effectiveness of § 207 is not destroyed by the failure to codify it as a part of Chapter 53. In any event, if the reference to Chapter 53 is deleted the indictment still states an offense under 26 U.S.C. §§ 5861(d) and 5871. Surplusage in an indictment may be disregarded. Bary v. United States, 10 Cir., 292 F.2d 53, 56. An error of citation is no ground for dismissal. Rule 7(c), F.R.Crim.P. We perceive no constitutional difficulty in the defendant's conviction under § 5861. United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356. The motion to quash was properly denied.

 The next issue is the voir dire examination of prospective jurors. A reading of the 50 pages of the transcript devoted to this subject discloses the thoroughness, fairness, and patience of the trial court. The defendant complains that he was not permitted to conduct the questioning. Examination by the court is authorized by Rule 24(a), F.R.Crim.P., and is proper in the absence of an abuse of discretion. Kreuter v. United States, 10 Cir., 376 F.2d 654, 656–657, cert. denied 390 U.S. 1015, 88 S.Ct. 1267, 20 L.Ed.2d 165. Complaint is made that the court did not ask all of the questions submitted by the defendant. The court is not required to propound questions which are argumentative, cumulative, or tangential. Brundage v. United States, 10 Cir., 365 F.2d 616, 618. We see no need of going into detail. The probing questions of the court thoroughly explored the minds of the prospective jurors to determine their fitness and qualifications to sit in the case. The court excused a number for cause. At the conclusion of the court's examination the defendant said he had no challenges for cause. He exercised all but two of his peremptory challenges. Silverthorne v. United States, 9 Cir., 400 F.2d 627, does not help the defendant's cause. The case at bar does not present either the massive publicity or the skimpy voir dire which characterized that case. We find no abuse of discretion and no

denial of the "essential demands of fairness." United States v. Brewer, 10 Cir., 427 F.2d 409, 411.

The extraordinary quantity of dangerous devices and explosives which were seized during the search presented a problem. Except for selected and representative items the material was taken to Fort Bliss, Texas, for storage. The Army considered the material too hazardous to keep and blew it up. Prior thereto photographs were taken of many items. Many of these were received in evidence. Other photographs disclosed the various rooms of the house as the searching agents found them and the area surrounding the house. An itemization of the photographs would unduly prolong this opinion. We put aside the problems relating to the lack or sufficiency of objections and say that in our opinion the exhibits were properly authenticated, relevant, and material.

Many alleged trial errors are asserted. These go to leading questions, hearsay, materiality of evidence, and restrictions on cross-examination. In an effort to make an overwhelming showing the defendant has presented a 126 page appendix to his brief detailing many trial incidents. We decline to separate the wheat from the chaff or to afford the defendant a trial de novo in the appellate court. Most of the claimed errors were not called to the attention of the trial court. We have considered them in the light of Rule 52(b), F.R.Crim.P., relating to plain errors or defects "affecting substantial rights." Viewed in this aspect, we are not impressed by the massive claims of the defendant. Whatever violence may have been done to the rules of evidence, we find nothing in the presentation of the government's case which unfairly prejudiced the substantial rights of the defendant. The prosecutors, although determined, conducted themselves with restraint, patience, and understanding. They recognized the technical inadequacies of the defendant but did not take advantage of them. The court gave the defendant practically free rein in the presentation of his defense. He testified at length under oath in a narrative and argumentative manner and covered much ground that would have been ruled out if the usual question and answer procedure had been followed. We find no improper limitation on cross-examination by the defendant. In sum, we find no plain errors or defects affecting substantial rights.

One incident deserves particular attention. Among the group that had gone from Hesperus, to Pinos Altos, to Williamsburg were Victor Horsfall and his wife Mary. For several weeks prior to and at the time of defendant's arrest they were imprisoned in boxes on the Williamsburg premises. Prior to the receipt of the evidence of imprisonment, the court held a hearing out of the presence of the jury. In his own testimony the defendant referred to the subject at some length.

At the time of defendant's arrest, the Williamsburg premises were occupied by defendant, the Horsfalls, and four others. One of the problems of the prosecution was to establish the connection between the defendant and the contraband. Another problem was to show that the actions of the defendant were wilful and knowing. One of the efforts of the defense was to shift possession and control to the other occupants of the premises.

Both of the Horsfalls testified that they were taken captive to prevent them from going to the authorities and telling what they knew about the Minutemen organization and its activities. Exhibit 84 is a written communication from defendant to Mrs. Horsfall answering questions concerning their release. One answer was:

"When our enemies are defeated and/or when the organization is strong enough that we don't need you any longer and that nothing you might do would hamper its continued operation."

In our opinion the evidence was admissible to show the state of mind of the defendant and to controvert the

possibility of possession and control by the Horsfalls. The conduct of an accused during the commission of an alleged crime is circumstantially relevant to prove both the commission of the acts charged and the state of mind during such commission. The acts preventing the Horsfalls from reporting to the authorities are relevant to the question of wilful and knowing possession of the items mentioned in the indictment.

The sufficiency of the evidence to sustain the conviction is attacked on the ground that possession of the contraband by the defendant is not established. Three witnesses, Janet Elder, Victor Horsfall, and Mary Horsfall, testified that DePugh was in charge of the group and its movements. It was his responsibility to decide what could be moved, stored or used. Possession may be either actual or constructive. Amaya v. United States, 10 Cir., 373 F.2d 197, 199. Dominion and control suffices to establish constructive possession. United States v. Wolfenbarger, 6 Cir., 426 F.2d 992, 994–995. The effort of the defendant to shift the blame on others presented a question for the jury and it decided the issue against him. In our opinion the evidence of guilt is overwhelming.

Little need be said about the instructions. The points raised on appeal were not preserved by objections in the trial court. We are convinced that the instructions properly and fairly presented the case to the jury. We find no error affecting substantial rights.

Finally, it is urged that the court erred in not sequestering the jury. The trial court has full discretion to determine whether the jury shall be allowed to separate at any particular time during the course of the trial. Hines v. United States, 10 Cir., 365 F.2d 649, 651. The court carefully and properly admonished the jury in regard to their conduct during separation. Defendant has shown no prejudice resulting from the separation of the jury. Roth v. United States, 10 Cir., 339 F.2d 863, 866.

Other points are argued in the prolix brief of the defendant. We have examined them and find that none have sufficient merit to warrant any discussion.

To return to the question of advisory counsel, our review of the record and of the claimed trial errors convinces us that the defendant had a fair trial free of any errors or defects which affected his substantial rights. He took and used every advantage attendant upon pro se representation. The prosecution recognized and respected his lack of legal proficiency. With admirable patience and understanding the trial court handled a difficult situation in a praiseworthy manner. In the circumstances presented, the failure to appoint advisory counsel was not an abuse of discretion.

Affirmed.